994 So.2d 196 (2008)
Nhan NEILL, appellant
v.
WATERWAY INC./TEAM AMERICA and Legion Insurance Company Successor Tennessee Insurance Guaranty Fund, Appellees.
No. 2007-WC-00346-COA.
Court of Appeals of Mississippi.
March 25, 2008.
Rehearing Denied July 22, 2008.
Certiorari Denied November 6, 2008.
*197 Austin R. Nimocks, Biloxi, K. Don Bishop, attorneys for appellant.
William Ross Bradley, Clarksdale, attorney for appellees.
Before LEE, P.J., CHANDLER, and BARNES, JJ.
LEE, P.J., for the Court.

PROCEDURAL HISTORY
¶ 1. On April 12, 2001, Nhan Neill was an employee of Waterway, Inc./Team America (Waterway) when he suffered an on-the-job injury to his right hand. Neill had been working for Waterway for approximately four months. His job required him, along with the help of a coworker, to lift molded plastic units weighing approximately 300 pounds each and fasten them to a frame by squeezing them with his hands. Neill would then assemble lights from component parts and attach the lights to each plastic unit. On the day of his injury, Neill's right hand "froze up," and he needed help to remove his hand from the unit and to pry the tool he was using from his right hand.
¶ 2. On March 13, 2003, Neill filed a petition to controvert with the Mississippi Workers' Compensation Commission, alleging that he suffered compensable injuries to both upper extremities on April 12, 2001. After a hearing, the administrative law judge (ALJ) found that Neill had suffered a 60% loss of industrial use of the right upper extremity and a 60% loss of industrial use of the left upper extremity. The ALJ awarded Neill permanent partial disability benefits. Both the Commission and the Tishomingo County Circuit Court affirmed the decision of the ALJ. Neill now appeals to this Court asserting two issues: (1) the trial court erred in affirming the decision of the Commission because Waterway produced no witnesses and (2) the overwhelming weight of the evidence shows that Neill is permanently disabled.

FACTS
¶ 3. At the time of his injury, Neill was twenty-eight years old and resided in Savannah, *198 Tennessee. In the past, Neill's jobs had included working as a stocker and bagger for a grocery store, performing landscape work, repairing bath tubs, performing electrical work, and repairing water slides. During his work repairing bath tubs, Neill pulled a muscle in his left hand and did not work for one to two months.
¶ 4. Subsequent to his injury in this case, Neill was referred to Dr. John Fraser, a neurosurgeon, who diagnosed Neill as suffering from bilateral carpal tunnel syndrome. Dr. Fraser opined that this syndrome was part of a general overuse of his hands. Eventually, Neill underwent surgery on both hands to relieve his problem.
¶ 5. Prior to his surgeries, Neill experienced dermatitis on his palms. Dr. James Mallette, an allergist, prescribed topical treatments, as well as oral medication, to control the itching. Dr. Mallette testified that Neill suffered from hand eczema. Dr. Mallette testified that he did not know what caused the eczema. Neill's condition improved enough to allow his carpal tunnel surgeries to proceed. A few months after both surgeries, Neill began to complain of pain in both hands and began to develop blisters on both hands.
¶ 6. Neill was referred to Dr. Dale P. Cunningham, a physiatrist, for testing to determine an improvement rating. Dr. Cunningham noted that Neill had reached maximum medical improvement. Dr. Cunningham stated that Neill could return to work with restrictions of light capacity work with no highly repetitive motion in both hands. Green Leaf Testing, the company that performed the tests, assessed a 10% permanent disability impairment to the left hand, a 10% impairment to the left upper extremity, an 8% impairment rating to the right hand, and an 8% impairment rating to the right upper extremity. Green Leaf Testing assessed an 11% impairment rating to the total body, and Dr. Cunningham agreed with this impairment rating.
¶ 7. Neill testified that, during this time, he attempted to return to work under restrictions. However, the work, despite the restrictions, caused his hands to swell and blister badly. Dr. Fraser then referred Neill to Dr. Gilbert Melson, an orthopedic surgeon. Dr. Melson was unable to determine any underlying orthopedic pathology. Dr. Melson concluded that Neill should see a rheumatologist to determine the cause of his condition. Neill attempted to return to light duty work a second time, but the work made his hands swell and crack.
¶ 8. Neill was then referred to Dr. Howard Fuchs, a rheumatologist. Dr. Fuchs opined that Neill did not have a primary rheumatic problem. He diagnosed Neill as suffering from reflex sympathetic dystrophy (RSD), a nerve dysfunction, which caused the bilateral carpal tunnel syndrome. Dr. Fuchs recommended that Neill wear gloves, apply daily heat treatments with paraffin wax, and take pain and anti-inflammatory medications. Dr. Fuchs stated that there was a 50-50 chance that Neill's type of work caused the RSD.
¶ 9. At the request of Neill's attorney, Dr. Joseph Boals, an orthopedic surgeon, evaluated Neill on two occasions. Dr. Boals opined that Neill suffered from residuals from the bilateral carpal tunnel release surgeries. Dr. Boals assessed an impairment rating of 20% to each upper extremity and noted that Neill could perform light, sedentary work.
¶ 10. At the request of Waterway, David Stewart performed a vocational assessment and determined that Neill could continue working successfully if he did not develop further medical complications.
¶ 11. At the request of Neill's attorney, Dr. Robert Kennon, a licensed psychologist *199 and vocational expert, evaluated Neill on two occasions. Dr. Kennon classified Neill's past jobs as unskilled to semi-skilled labor positions. Dr. Kennon noted that Neill was in the lower 5% range of his age group for intelligence and academic ability, and Neill had no specific degrees or licenses that would allow him access into other vocations. Dr. Kennon opined that Neill should avoid repetitive, forceful gripping with his hands. Dr. Kennon also determined that, based upon his vocational injury and his limited intellectual capabilities, Neill had an 81% vocational disability. After a follow-up examination, Dr. Kennon noted that Neill's "psychological difficulties are likely a significant impediment to his recovery." Dr. Kennon further opined that Neill was unable to cope well with difficult situations and lacked the motivation necessary to "face the challenges of a rigorous rehabilitation program."
¶ 12. Neill testified that he had not sought any employment since leaving Waterway.

STANDARD OF REVIEW
¶ 13. The standard of review in workers' compensation cases is well established. The decision of the Commission will be reversed only if it is not supported by substantial evidence, is arbitrary or capricious, or is based on an erroneous application of the law. Weatherspoon v. Croft Metals, Inc., 853 So.2d 776, 778(¶ 6) (Miss.2003) (citing Smith v. Jackson Constr. Co., 607 So.2d 1119, 1124 (Miss. 1992)). If the Commission's decision and findings of fact are supported by substantial evidence, then we are bound by them even if we would have been convinced otherwise. Spann v. Wal-Mart Stores, Inc., 700 So.2d 308, 311 (¶ 12) (Miss.1997) (citing Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss.1988)). We will exercise de novo review on matters of law. KLLM, Inc. v. Fowler, 589 So.2d 670, 675 (Miss. 1991).

DISCUSSION
I. DID THE TRIAL COURT ERR IN AFFIRMING THE COMMISSION'S DECISION WHEN WATERWAY PRODUCED NO WITNESSES?
II. DID THE OVERWHELMING WEIGHT OF THE EVIDENCE SHOW THAT NEILL WAS PERMANENTLY AND TOTALLY DISABLED?
¶ 14. As Neill discusses both his issues raised on appeal together, we will also. Neill contends that since Waterway offered no witnesses, the Commission's findings are clearly erroneous and contrary to the overwhelming weight of the evidence. Specifically, Neill claims that because Waterway did not present any witnesses or refute Dr. Kennon's findings, then Dr. Kennon's opinion supports, as a matter of law, an award of permanent disability compensation. We first note that all of the medical proof found that Neill did suffer an impairment to both extremities. The expert evidence, however, on Neill's impairment rating was conflicting, including evidence by Neill's own expert witnesses. Dr. Cunningham assessed Neill an 8% permanent impairment to his right upper extremity and a 10% permanent impairment to his left upper extremity. Dr. Boals, Neill's expert, concluded that Neill suffered a 20% impairment rating to both extremities. Both Dr. Cunningham and Dr. Boals concluded that Neill could return to work with certain restrictions. Dr. Fuchs also concluded that Neill would be unable to perform certain types of work, especially involving heavy tasks. Dr. Kennon was the only expert to testify that Neill was permanently and totally disabled.
¶ 15. The supreme court has held that "whenever the expert evidence is conflicting, the [c]ourt will affirm the Commission *200 whether the award is for or against the claimant." Raytheon Aerospace Support Servs. v. Miller, 861 So.2d 330, 336(¶ 13) (Miss.2003); see also Smith v. Durant Elec. Corp., 918 So.2d 860, 863(¶ 10) (Miss. Ct.App.2005). In her opinion, the ALJ found that a "preponderance of the evidence reflects that [Neill] [had] suffered an industrial impairment beyond either set of medical impairment ratings assigned." The ALJ awarded Neill permanent partial disability benefits, finding Neill suffered a 60% loss of industrial use of both the right and left upper extremities. Both the Commission and the trial court affirmed the ALJ's decision. We find substantial evidence to support the findings of the Commission. Accordingly, we find no error and affirm the judgment of the trial court.
¶ 16. THE JUDGMENT OF THE TISHOMINGO COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., MYERS, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.