## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CT-01025-SCT

*HARDAWAY COMPANY AND ST. PAUL FIRE AND
MARINE INSURANCE COMPANY*

*v.*

*HARVEY BRADLEY*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 5/9/2002 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | ANDREW D. SWEAT |
| | BRENDA CURRIE JONES |
| ATTORNEYS FOR APPELLEE: | DANA HELENE EVANS |
| | JESSIE L. EVANS |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | REVERSED AND RENDERED - 11/18/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     Harvey Bradley filed a workers' compensation claim after suffering a work-related injury.   Bradley and his employer, Hardaway Company ("Hardaway"), disputed the issue of whether Bradley needed surgery for this injury.   The issue was presented to a Mississippi Workers' Compensation Commission administrative judge who found in favor of the employer, ruling that Bradley did not need the surgery.   This determination was affirmed by the

Full Commission. On appeal, the Circuit Court of Hinds County reversed the order of the Commission and ruled in favor of granting the surgery to Bradley. Hardaway appealed, and the judgment was affirmed by the Court of Appeals. ***Hardaway Co. v. Bradley***, 881 So. 2d 241 (Miss. Ct. App. 2003). Thereafter, Hardaway filed for a writ of certiorari, which this Court granted.

## FACTS

¶2. While working for Hardaway, Harvey Bradley sustained a compensable work injury when wet cement spilled on his head and neck. Hardaway paid Bradley temporary benefits from the date of injury, Nov. 1, 1996, until August 29, 1997, in the amount of $12,282.67. Hardaway terminated benefits at that time because it concluded that Bradley had reached maximum medical recovery based on the opinion of Dr. Howard Katz.

¶3. Bradley was treated by various physicians. He was treated by Dr. Frenz for approximately a year after the injury occurred (from Nov. 18, 1996 through Nov. 25, 1997) and visited his office about 26 times. Dr. Frenz diagnosed disc desiccation at C4-5 and C5-6 with central disc bulging. Dr. Frenz found that Bradley's condition did not improve with conservative treatment, and he concluded that surgery was needed.

¶4. On January 15, 1997, at the request of Hardaway, neurosurgeon Dr. Lon Alexander performed an independent medical examination on Bradley. Dr. Alexander's report revealed a free range of cervical motion, normal strength in all extremities, reflexes that were equal, and found an MRI taken on Nov. 6, 1996 to be within normal limits. At this time Bradley was wearing a soft collar and complaining of posterior neck pain that radiated down his right arm

2

into his hand with numbness. Bradley also complained of low back pain with burning in his legs.

¶5.    Dr. Howard Katz conducted four separate independent medical examinations. Bradley's first visit with Dr. Katz was on May 9, 1997. Dr. Katz's examination revealed a pin prick exam to be unreliable with no explanation for the inconsistency. Sometimes Bradley described a tap as dull, and when tapped in the same place, he would say it was sharp. The deep tendon reflexes were normal and symmetric, and the rest of the exam was normal. Dr. Katz concluded that Bradley had a status post-cervical strain, and he found no objective evidence of neurologic deficit.

¶6.    A second examination by Dr. Katz was performed on June 19, 1997, and again he found the pin prick examination to be unreliable. Dr. Katz referred Bradley to physical therapy for strengthening, exercise and flexibility.

¶7.    On a third visit to Dr. Katz on July 10, 1997 Bradley reported no improvement with the physical therapy and pain in his neck, bilateral arm, lower back and right leg. Dr. Katz did not change his diagnosis, concluded that Bradley's complaints were difficult to compare with his injury, and ordered a functional capacity evaluation for Bradley at the Rehability Center.

¶8.    On August 20, 1997, the Rehability Center evaluated Bradley. The therapist concluded that Bradley did not give his maximum effort and that he magnified his symptoms. Bradley's true functional maximums could not be determined secondary to stopping tasks due to complaint of pain with few, if any, changes in physical signs present to warrant stopping the tasks.

¶9.     The fourth and last visit with Dr. Katz occurred on August 29, 1997.    Bradley complained of tingling all over his body.   Bradley initially refused, but then proceeded to have a functional capacity evaluation which showed four or five positive organic signs, inconsistent varying behaviors and overall self-limiting, inconsistent and inappropriate behavior with all testing except for his group strength test.   Dr. Katz did not see any indication for surgery and concluded Bradley had reached maximum medical recovery from a physiatric perspective. Bradley's functional capacity evaluation indicated that he could only do light duty work, but Dr. Katz believed he could probably do up to medium duty work.   Dr. Katz released Badley with some restrictions and no permanent impairment rating.

¶10.    After reviewing the opinions of all doctors and the evidence from the Rehability Center, the administrative judge and the Commission determined that Bradley did not need further surgery and had reached maximum medical recovery on August 29, 1997.

## ANALYSIS

### I.  The Commission's findings

¶11.    Appellate courts are bound by the decision of the Mississippi Workers' Compensation Commission if the Commission's findings of fact and order are supported by substantial evidence. *Fought v. Stuart C. Irby Co.*, 523 So. 2d 314, 317 (Miss. 1988).   "This is so, even though the evidence would convince this Court otherwise, were we the fact finder."   *Id.* (citations omitted). "Stated differently, this Court will reverse the Commission's order only if it finds that order clearly erroneous and contrary to the overwhelming weight of the evidence." *Id.*   "A finding is clearly erroneous when, although there is some slight evidence to support it, the reviewing court on the entire evidence is left with the definite and firm

4

conviction that a mistake has been made by the Commission in its findings of fact and in its application of the Act." ***Weatherspoon v. Croft Metals, Inc.*** 853 So. 2d 776, 780 (Miss. 2003) (citations omitted).

¶12.    The Commission based its decision by examining the conflicting opinions of Dr. Frenz, Dr. Katz, Dr. Alexander and the Rehability Center.   Hardaway argues that the ruling of the Commission was supported by substantial evidence.   In ***Baugh v. Cent. Miss. Planning & Development Dist.***, 740 So. 2d 342, 344 (Miss. Ct. App. 1999), quoting ***Oswalt v. Abernathy & Clark***, 625 So.2d 770, 772 (Miss.1993), the Court of Appeals held that when examining conflicting opinions by medical experts, "we will not determine where the preponderance of the evidence lies . . . the assumption being that the Commission as trier of fact, has previously determined which evidence is credible, has weight, and which is not."

¶13.    The order of the administrative judge relied on the following evidence in making the determination that surgery was not warranted:  the November 6, 1996 MRI; the February, 1996 CT scan and x-rays; Dr. Frenz's medical notes; the January, 1997 myelogram; the January, 1997 CT scan; the March, 1997 CT scan; Dr. Katz and Dr. Alexander's notes; and the August 1997, occupational work capacity study.

¶14.    This Court finds that substantial evidence supported the Commission's order.   Only one (Dr. Frenz) out of three doctors concluded that Bradley needed surgery.   The others (Dr. Katz and Dr. Alexander) concluded that surgery was not necessary.   Bradley argues that Dr. Frenz's opinion should be given greater weight because he treated and examined him on more occasions than did Dr. Alexander and Dr. Katz.   However, the administrative judge stated in her

order that, "Although Dr. Frenz treated claimant more often over a longer period of time than Dr. Alexander and Dr. Katz, a preponderance of the evidence indicates that the opinions of Dr. Alexander and Dr. Katz have greater probative value than the opinions of Dr. Frenz." This Court agrees with Court of Appeals Judge Griffis's dissenting opinion in that, "here, with the testimony of two physicians, who conducted independent medical examinations, the Commission's decision was supported by more than a scintilla of evidence. Therefore, 'substantial evidence' supporting the Commission's decision was present." *Hardaway Co. v. Bradley*, 881 So. 2d at 247 (Griffis, J., dissenting).

¶15.    In *Raytheon Aerospace Support Servs v. Miller*, 861 So. 2d 330 (Miss. 2003), this Court reversed the Court of Appeals decision on the basis that they "impermissibly substituted their opinions for that of the Commission." *Id.* at 333. *Raytheon* involved a woman who had been off work for a previous injury, returned to work, and allegedly suffered a second injury the next day. *Id.* The Commission ruled for the employer when looking at conflicting medical and lay opinion testimony, the circuit court reversed, and the Court of Appeals affirmed the reversal of the Commission's order. *Id.* In reversing the Court of Appeals' decision, this Court stated that, "The Commission also serves as the ultimate fact finder in addressing conflicts in medical testimony and opinion." *Id.* at 336.

¶16.    Here, the Court of Appeals erred in affirming the circuit court's reversal of the Commission's order. The evidence supporting the Commission's findings included opinions from two doctors, and an opinion by the Rehability Center. Only one doctor was in favor of the proposed surgery. The Commission's decision was based on substantial evidence.

### II.  Applicability of *Spann v. Wal-Mart Stores, Inc.*

¶17.   ***Spann v. Wal-Mart Stores, Inc.***, 700 So. 2d 308 (Miss. 1997), was also a workers' compensation case that involved different opinions as to whether the claimant should receive surgery.  ***Id***.  In ***Spann***, the treating physician recommended surgery, a second doctor felt that there was only a 50/50 chance that surgery would improve Spann's situation enough to go back to work, and a third doctor who saw and examined Spann only one time, found claimant did not need surgery.  ***Id.***  However, unlike the case sub judice, the third doctor's opinion was held to be not credible because his answers on cross-examination were uncertain, he had only examined Spann one time, and he had not reviewed Spann's MRI.  ***Id.*** at 310.

¶18.   Here, the Court of Appeals' majority quoted ***Spann*** in saying that, "the case law and Act mandate that as long as a particular treatment is deemed necessary and reasonable by a competent treating physician, the employer and carrier are obligated to furnish such treatment."  ***Hardaway***, 881 So. 2d at 246 (¶21).  However, this quote misinterprets ***Spann.*** Spann was not given the surgery simply because his treating physician prescribed it, but because the Commission was not presented with any other credible evidence to the contrary. ***Spann***, 700 So. 2d 308. In ***Spann***, the only difference between the two credible opinions were that one felt surgery was necessary, and the other thought there was a 50/50 chance that surgery would be beneficial.  ***Id.*** at 310.   ***Spann*** is distinguishable here because there is credible evidence supporting the Commission's finding that the claimant does not need surgery. Therefore, ***Spann*** does not apply and does not control the issue presented.

¶19.   Furthermore, the Court of Appeals' application of ***Spann*** is contrary to Mississippi's Workers' Compensation Laws. According to Miss. Code Ann. § 71-3-15(1) (Rev. 2000):

7

Should the employer desire, he may have the employee examined by a physician other than of the employee's choosing for the purpose of evaluating temporary or permanent disability or medical treatment being rendered under such reasonable terms and conditions as may be prescribed by the commission.

Also according to Miss. Code Ann. § 71-3-15(2):

Whenever in the opinion of the commission a physician has not correctly estimated the degree of permanent disability or the extent of the temporary disability of an injured employee, the commission shall have the power to cause such employee to be examined by a physician selected by the commission, and to obtain from such physician a report containing his estimate of such disabilities.

The Court of Appeals' interpretation of *Spann* would not give the employer a way to controvert medical treatment which is reasonable or necessary. This Court agrees with the Judge Griffis's dissenting opinion which states, "*Spann* stands for the proposition that if all physicians agree that a certain medical treatment would benefit the employee and *there is no credible evidence to the contrary*, the Commission is then obligated to authorize the treatment." *Hardaway,* 881 So. 2d at 249 (¶34) (Griffis, J., dissenting) (emphasis added).

## CONCLUSION

¶20.   There is substantial evidence to support the findings of the Commission. The Commission based its findings on the opinions of two competent doctors and on the findings of various medical tests and procedures. Furthermore, the Court of Appeals misapplied *Spann* to the case sub judice. *Spann* did not involve *conflicting* medical evidence as presented here. For these reasons, we reverse the judgments of the Court of Appeals and the Hinds County Circuit Court, and we render judgment here reinstating and upholding the decision of the Commission.

¶21.   **REVERSED AND RENDERED.**

8

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON AND DICKINSON, JJ., CONCUR. DIAZ AND GRAVES, JJ., NOT PARTICIPATING.**