979 So.2d 736 (2008)
Evelyn Kay MANNING, Appellant,
v.
SUNBEAM-OSTER HOUSEHOLD PRODUCTS and National Union Fire Insurance Company of Pittsburgh, PA, Appellees.
No. 2007-WC-00786-COA.
Court of Appeals of Mississippi.
April 15, 2008.
*738 Lester Clark, Nathan Lester Clark, Lexington, attorneys for appellant.
Matthew Jason Sumrall, attorney for appellees.
Before MYERS, P.J., IRVING and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. In October 1995, Evelyn Kay Manning suffered a back injury while working at a manufacturing plant owned and operated by Sunbeam-Oster Household Products (employer). Manning filed a petition to controvert. Initially, all of Manning's medical treatment, including treatment for her psychological issues, was covered and paid for by the employer's insurance provider, National Union Fire Insurance Company of Pittsburgh, PA (carrier).
¶ 2. After a lengthy course of treatment, extending over a period of more than nine years, covering a range of physical and mental problems, and involving more than twenty-three different physicians, Manning's claim was finally evaluated by an administrative law judge in October 2004. The administrative law judge concluded that Manning had a compensable claim for some of the treatment she received. However, the administrative law judge also concluded that an elective surgery performed in February 2002 and all treatment related to her physical problem after that 2002 surgery were non-compensable, and that all her psychological care was non-compensable. The administrative law judge's decision was later affirmed by the full Mississippi Workers' Compensation Commission (Commission) and the Circuit Court of Forrest County.
¶ 3. Aggrieved, Manning appeals. The assignments of error Manning raises on appeal can be reduced to the following issues: (1) whether the administrative law judge applied the correct burden of proof; (2) whether the administrative law judge correctly weighed the medical evidence; (3) whether substantial evidence supports the administrative law judge's finding that the surgery of February 2002 and all subsequent treatment for her physical injury is non-compensable; and (4) whether substantial evidence supports the administrative law judge's finding that all treatment for her psychological issues is non-compensable.
¶ 4. Finding no error, we affirm the judgment of the circuit court.

FACTS AND PROCEDURAL HISTORY
¶ 5. On October 14, 1995, Manning suffered a back injury lifting a "tote" while *739 working on an assembly line at a plant belonging to her employer. Over the course of the next nine years, Manning was treated by more than twenty-three different physicians for a variety of physical and mental problems allegedly stemming from her back injury. Her treatment began the week after she injured her back, during which she visited Dr. Kim Puckett, a chiropractor, complaining of severe lower back pain. On November 2, 1995, Manning went to a clinic in Hattiesburg and was treated by Dr. Bruce McCarthy, an orthopedic surgeon. Dr. McCarthy recommended bedrest and prescribed anti-inflammatories and muscle relaxants. An X-ray taken during that visit revealed no acute injury. Manning underwent an MRI later that month, which revealed a central disc bulge at L4-5, but no evidence of nerve root or canal compromise. Dr. McCarthy continued to recommend a course of anti-inflammatories, muscle relaxants, and bedrest.
¶ 6. On November 29, 1995, Manning saw another orthopedic surgeon, Dr. Claude Williams, in New Orleans. Dr. Williams noted that Manning demonstrated no abnormal neurological findings upon examination; but she nevertheless recommended a trial of epidural steroid injections, which Manning received.
¶ 7. In July 1996, an independent medical examination was conducted by Dr. Richard Buckley, a neurosurgeon, at the request of the employer and the carrier. Dr. Buckley reviewed the MRI taken in Hattiesburg, finding that the bulge at L4-5 was deterioration consistent with Manning's age. He concluded that there was no objective abnormality in Manning's condition and that Manning was suffering from no neurologic deficit.
¶ 8. In September 1996, Manning was seen by Dr. Bertha Blanchard, a neurologist. Dr. Blanchard concluded that Manning might have a possible left lumbosacral radiculopathy, and she recommended that Manning undergo a myelogram, a bone scan, and EMG/NCS testing, all of which were performed.
¶ 9. Later that same month, another independent medical examination was conducted by Dr. Robert Manolakas, a physical medicine specialist. After examining Manning, Dr. Manolakas reported that his testing revealed multiple signs of exaggerations and inconsistencies in Manning's complaints. He concluded that there was no evidence that Manning was suffering from radiculopathy, nerve root damage, or nerve root embarrassment. He also found that Manning was at maximum medical improvement, and there was no need for further testing.
¶ 10. In November 1995, Manning underwent an independent psychiatric evaluation conducted by Dr. Henry Maggio at the request of the employer and the carrier. Dr. Maggio concluded that Manning had an adjustment disorder and chronic depression. He also stated that her psychological condition was not causally related to her work injury, but her psychological problems might be resulting in some form of symptom magnification.
¶ 11. Over the course of the next eight years, Manning was seen by a number of different physicians, who conducted a wide variety of different tests and offered various diagnoses for Manning's continuing back pain. The conclusions of these physicians might best be summarized as follows. Some of the physical and internal medical specialists concluded that Manning's pain was legitimate and could be treated with surgery or other techniques. Others concluded that she exhibited no abnormal signs, was at maximum medical recovery, and could return to work. These opinions were not evenly split among physicians selected by the employer and the carrier *740 and the physicians selected by Manning. Almost all of the psychologists and psychiatrists seen by Manning diagnosed her with severe mental and emotional trauma, including personality disorder with histrionic and schizoid traits, avoidant personality disorder, anxiety disorder, and chronic major depression. Most of the mental health professionals concluded that these mental problems were exacerbating if not causing her pain symptoms. Most concluded that Manning's psychological problems pre-dated her work injury.
¶ 12. Finally, in February 2002, Manning underwent an elective lower back surgery for L4-5 discogenic disease conducted by Dr. Lee. After the surgery, Manning continued to report that she was in pain, and in June 2003, she was treated by Dr. Jeffrey Summers, a pain management specialist, as part of an independent medical examination ordered by the Commission. Dr. Summers concluded that Manning had no neurologic deficit, and that any further surgical treatment was "doomed to failure." An additional Commission-ordered independent medical exam was conducted by Dr. Rahul Vohra in February 2004. Dr. Vohra concluded that Manning had a somatoform disorder with preexisting depression and anxiety. He also found that further medical intervention had no chance of providing any greater relief to Manning due to her preexisting mental health issues.

STANDARD OF REVIEW
¶ 13. In cases involving orders of the Mississippi Workers' Compensation Commission, the Commission sits as finder of fact and its findings are entitled to substantial deference. Raytheon Aerospace Support Servs. v. Miller, 861 So.2d 330, 335 (¶ 11) (Miss.2003). Therefore, we will not interfere with the findings of the Commission unless those findings are not supported by substantial evidence in the record. Id. at (¶ 9). Additionally, "[t]he Commission is also the ultimate judge of the credibility of witnesses." Barber Seafood, Inc. v. Smith, 911 So.2d 454, 461 (¶ 27) (Miss.2005) (citation omitted). When the evidence presented by witnesses on a particular issue is conflicting, we are not empowered to determine where the preponderance of evidence lies. Id. Instead, "this Court must affirm the decision of the Commission where substantial credible evidence supports the Commission's order." Id.

DISCUSSION AND ANALYSIS
(1) The administrative law judge applied the correct burden of proof.
¶ 14. Manning asserts that the administrative law judge, instead of applying a burden of proof based on preponderance of the evidence or clear and convincing evidence, should have applied a burden of proof based on a substantial evidence standard. However, in doing so, Manning has confused the issues of the correct burden of proof to be applied by the administrative law judge and the standard of review applied by this Court on appeal.
¶ 15. "In a workers' compensation case, the claimant bears the burden of proving by a `fair preponderance of the evidence' each element of the claim." Hedge v. Leggett & Platt, Inc., 641 So.2d 9, 13 (Miss.1994) (citing Bracey v. Packard Elec. Div., Gen. Motors Co., 476 So.2d 28, 29 (Miss. 1985)). Thus, the correct burden of proof for the administrative law judge to apply in this case would have been a burden based on the preponderance of the evidence, and this was in fact the burden applied during the administrative hearing. As noted above, under our standard of review in cases such as this, we defer to the findings of the administrative law *741 judge and the full Commission so long as those findings are supported by "substantial evidence." The substantial evidence standard, therefore, is not a burden of proof to be applied by the administrative law judge in the original hearing, but a factor used by appellate courts in reviewing the decisions reached in administrative proceedings.
(2) The administrative law judge correctly weighed the medical evidence.
¶ 16. Both sides in this case have engaged in an argument over an issue that they frame as one involving the proper degree of deference an administrative law judge should give to a treating physician. Manning argues that an administrative law judge, when faced with opinions from two equally competent physicians, should defer to the "treating physician," relying primarily on South Central Bell Telephone Co. v. Aden, 474 So.2d 584 (Miss.1985). The employer and the carrier argue against this proposition, primarily citing to Spann v. Wal-Mart Stores, Inc., 700 So.2d 308 (Miss.1997) and Hardaway Co. v. Bradley, 887 So.2d 793 (Miss.2004).
¶ 17. Both sides, however, confuse the issue on this point. The question of deference that they attempt to address is better framed as one of deference to a patient-selected physician over a physician selected by the employer and the carrier, rather than deference to a treating physician over a non-treating physician. Although the workers' compensation statute gives the claimant the right to select their primary physician, it never refers to that physician as a "treating" physician, and we see no reason why a physician examining a patient in an independent medical examination requested by an employer or a carrier is not "treating" the patient. Therefore, we reject this distinction between treating and non-treating physicians.
¶ 18. Furthermore, after a close reading of Aden, at no place can this Court find language that attempts to set out a rule whereby, all other things being equal, an administrative law judge is required to defer to the opinion of a patient-selected or "treating" physician. However, we are mindful that this is not the first time this issue has been presented to the Court framed in this manner. See Richardson v. Johnson Elec. Auto., Inc., 962 So.2d 146 (Miss.Ct.App.2007). The following analysis is provided to offer guidance on this issue.
¶ 19. In Aden, a woman in her mid-thirties suffered a back injury while working for the telephone company. Aden, 474 So.2d at 586. She filed a workers' compensation claim, and after a hearing by an administrative law judge, she was found to be permanently disabled. Id. at 584. The administrative law judge heard testimony from two physicians. Id. at 588. One of which, Dr. Browning, was patient-selected and had examined the claimant on numerous occasions. Id. The other physician, Dr. Yerger, was employer-selected and examined the patient only once or twice. Id. The patient-selected physician concluded that the woman was permanently disabled; the employer-selected physician that she was not permanently disabled. Id. In appealing the finding of the administrative law judge, the employer and the carrier argued that the evidence presented by the physician they selected should control since he examined the woman at a later time than Dr. Browning, the patient-selected physician. Id. at 592.
¶ 20. In upholding the decision of the administrative law judge, which admittedly favored the evidence presented by the patient-selected physician, the Mississippi Supreme Court stated that:
We regard the testimony of Dr. Yerger vis-a-vis the testimony of Dr. Browning *742 as each constituting admissible medical opinions which were submitted to the triers of facts, the members of the Mississippi Workmen's [sic] Compensation Commission. The Commission was charged with the responsibility under our law for weighing and evaluating this testimony and all other testimony before and making a finding. The net effect of the Commission's fact finding in this regard was that Dr. Yerger's testimony was simply not credible. The fact that it was admissible testimony and the fact that Dr. Yerger examined the claimant last in no way serves to undercut the Commission's finding.
Id. at 593 (emphasis added). Contrary to Manning's assertions, the language above in no way suggests that, in the face of equally competent medical testimony, an administrative law judge is required to defer to a "treating" or patient-selected physician. Although the administrative law judge and later the full Commission did rely on the testimony of the patient-selected physician, they did so simply because the only competing testimony from employer-selected physicians was judged to lack all credibility. Id. Manning is, therefore, incorrect in her assertions that Aden requires the administrative law judge to defer to the physicians she selected in the instant case.
¶ 21. The cases cited by the employer and the carrier provide further support for this conclusion. In Spann, an employee of Wal-Mart suffered a back injury while carrying a tire. Spann, 700 So.2d at 310 (¶ 6). He was seen by Dr. John Frenz, an orthopedic surgeon, who recommended he undergo laparoscopic back surgery for a disc displacement. Id. The employee was later examined by Dr. Elmer Nix, another orthopedic surgeon, who concluded that the disc displacement was within normal limits. Id. at (¶ 9). However, Dr. Nix also stated that he had not reviewed the worker's MRI, and his answers were uncertain because he had only seen the employee one time. Id. Finally, the worker saw an additional orthopedic surgeon, Dr. Patrick Barrett, who diagnosed the disc displacement as a problem but he concluded that the recommended surgery would provide a less than fifty-percent chance that the employee would be able to return to his earlier duties. Id. at (¶ 10).
¶ 22. An administrative law judge, the full Commission, and this Court all denied the employee's claim for compensation for the laparoscopic back surgery. The supreme court reversed those decisions, holding that:
Wal-Mart is obligated, pursuant to the Act, to allow Spann to have the surgery recommended by Dr. Frenz, the primary treating physician. Dr. Barrett states that in his opinion, having seen Spann on a limited basis, that there is only a 50-50 chance the laparoscopic surgery will allow Spann to return to heavy work, and he does not express an opinion as to whether or not this surgery would relieve Spann's pain. Only Dr. Nix . . . took the position that surgery was unnecessary or would not be beneficial to Spann's recovery.
Spann, 700 So.2d at 315 (¶ 33). Although the supreme court referred to Dr. Frenz as the "primary treating physician" and sided with his conclusions, this opinion merely confirms our basic standard of review in all workers' compensation cases. We defer to the decisions of the administrative law judge and the Commission when those decisions are supported by substantial credible evidence. In Spann, the decisions of the administrative law judge and the Commission to deny compensation for the surgery, in the view of the supreme court, were not supported by substantial credible evidence. In fact, the *743 court clarified its conclusion in Spann in the more recent Hardaway case, stating:
Spann was not given the surgery simply because his treating physician prescribed it, but because the Commission was not presented with any other credible evidence to the contrary. In Spann, the only difference between the two credible witnesses were that one felt surgery was necessary, and the other thought there was a 50/50 chance that surgery would be beneficial.
Hardaway, 887 So.2d at 797 (¶ 18). In keeping with the substantial evidence standard of review, the supreme court reversed the decisions of the administrative law judge, the Commission, and this Court in Spann, not because those decisions failed to defer to a "treating" physician but because they were not supported by substantial credible evidence.
¶ 23. Finally, the supreme court's decision in Hardaway provides a direct rebuke to Manning's argument on the proper deference that must be given to a patient-selected physician. In Hardaway, a worker named Harvey Bradley was injured when wet cement fell on his head. Hardaway, 887 So.2d. at 794 (¶ 2). He initially saw the now familiar Dr. Frenz, who eventually concluded that Bradley needed surgery. Id. at (¶ 3). At the request of his employer, Bradley was also examined once by Dr. Lon Alexander and four times by Dr. Howard Katz, who both concluded that surgery was unnecessary. Id. at 794-95 (¶¶ 4-5). An administrative law judge later issued an order denying compensation for the surgery, an order which was affirmed by the Commission, but reversed by the circuit court and this Court. Id. at 794 (¶ 1).
¶ 24. In reversing the decision of the circuit court and this Court, the supreme court stated that "here, with the testimony of two physicians, who conducted independent medical examinations, the Commission's decision was supported by more than a scintilla of evidence. Therefore, `substantial evidence' supporting the Commission's decision was present." Id. at 796 (¶ 14). In fact, the supreme court reversed those decisions granting compensation for the surgery even while agreeing with the administrative law judge's finding that "Dr. Frenz treated claimant more often over a longer period of time than Dr. Alexander and Dr. Katz. . . ." Id. The supreme court's ruling in Hardaway clearly indicates that administrative law judges are not required to defer to "treating" or patient-selected physicians when they are presented with credible countervailing evidence. Therefore, we find Manning's argument on the issue of the proper weight to be given to the testimony of "treating" or patient-selected physicians to be contrary to the prevailing law in this state, and this assignment of error to be without merit.
¶ 25. As a final aside on this issue, we note that the employer and the carrier have expressed concern over recent orders of the Commission in which they have seemingly adopted the rule Manning urges us to apply in this case. Specifically, the employer and the carrier quote from a recent decision of the Commission, Alexander v. Forest Hill Nursing Center, Inc., MWCC No. 02 06438-H-9709 (Sept. 21, 2005), in which the Commission stated "If the evidence presented is equivocal or equally credible (that is, two or more competent physicians simply disagree about the efficacy of the contemplated procedure) then deference must be provided to the claimant's treating physician." Id. Given our discussion above, it should be clear that any such rule is contrary to the current law, a conclusion the Commission itself may have already reached as there is some dispute over whether it followed the *744 rule set out in Alexander in the instant case. Regardless, however, of whether the Commission followed the rule in this case, the language quoted from Alexander above is an incorrect statement of the law in this state.
(3) Substantial evidence supports the administrative law judge's findings that physical treatment past February 2004 is non-compensable.
¶ 26. Manning argues that the orders of the administrative law judge and the Commission denying her compensation for the surgery performed by Dr. Lee in February 2002 and all subsequent treatment for her physical problem, excluding examinations ordered by the Commission, were not supported by substantial evidence and should be reversed by this Court.
¶ 27. In the order denying compensation, the administrative law judge relied primarily on the findings of Dr. Michael Fromke, Dr. McCarthy, Dr. Williams, Dr. Buckley, and Dr. Manolakas. It noted that Dr. Fromke concluded that Manning had reached maximum medical improvement on May 19, 1998, with no permanent medical impairment or work restrictions related to the injury. The order also noted that at the time of Dr. Fromke's diagnosis, Dr. McCarthy and Dr. Williams had both diagnosed a disc bulge at L4-5, and neither had recommended surgery. Furthermore, the order stated that Dr. Buckley had concluded that Manning had no true objective abnormality and no neurological deficit, and Dr. Manolakas had determined that there was a very poor correlation between Manning's subjective complaints and his objective findings.
¶ 28. The conclusions of the physicians listed above provide more than enough substantial credible evidence that Manning did not require the surgery performed by Dr. Lee in February 2002 or any further treatment past that point. Under our standard of review in this case, we cannot judge the individual credibility of each physician. If the decisions of the administrative law judge and the Commission are supported by substantial credible evidence, we must defer to those decisions. In this case, there clearly exists substantial evidence sufficient to support a finding that Manning did not require the surgery of February 2002 or any further treatment for her back injury. Accordingly, we find Manning's argument that the decisions of the administrative law judge and the Commission were not supported by substantial evidence to be without merit.
(4) Substantial evidence supports the administrative law judge's finding that psychological treatment is non-compensable.
¶ 29. Finally, Manning argues that the orders of the administrative law judge and the Commission denying her compensation for treatment related to her psychological problems were not supported by substantial evidence, and we should reverse those decisions.
¶ 30. During the administrative hearing, Manning admitted on cross-examination that she suffered fairly severe mental trauma as a child. She was frequently whipped and beaten by both her mother and father. She was sexually abused by her brother-in-law as a young child. She was raped at the age of fourteen by a man she later married. She revealed much of the same information to several of the psychologists and psychiatrists who examined her in connection with this case.
¶ 31. In support of the order denying compensation for Manning's psychological treatment, the administrative law judge relied on the facts about her abusive child-hood *745 revealed during cross-examination and to her treating physicians. The administrative law judge also relied on the opinions of Dr. Henry Maggio, Dr. James Brister, and Dr. Ed Anderson. Dr. Maggio, a psychiatrist who saw Manning many times between 1996 and 2003, concluded that Manning had underlying psychiatric problems stemming from her childhood abuse unrelated to her work injury, including a personality disorder with histrionic and dependent traits, an adjustment disorder, and chronic depression. Dr. Brister stated that he could not relate her depression and other psychological symptoms to her back injury. Dr. Anderson diagnosed a schizoid personality disorder with avoidant features and stated these problems were fairly pronounced and were probably exacerbating her depression and any physical problems she may have had.
¶ 32. Again, based on our standard of review in this case, we cannot say that the testimony of these physicians did not provide substantial evidence that the psychological problems suffered by Manning were unrelated to her work injury and, therefore, non-compensable. Accordingly, we find this issue to be without merit.
¶ 33. THE JUDGMENT OF THE CIRCUIT COURT OF FORREST COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ROBERTS AND CARLTON, JJ., CONCUR. BARNES, J. CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.