MYERS, P.J.,
 

 for the Court.
 

 ¶ 1. Ruth Wooten filed a petition to controvert alleging that she developed carpel tunnel syndrome as a result of her work at Franklin Corporation (Franklin). A hearing on the merits was conducted by the administrative law judge (ALJ), who ruled that Wooten was not entitled to permanent disability benefits. Wooten appealed this decision to the Mississippi Workers’ Compensation Commission (Commission), which affirmed the decision of the ALJ. Wooten then appealed the Commission’s decision to the Chickasaw County Circuit Court, which affirmed the Commission’s decision. Aggrieved, Wooten now appeals the circuit court’s judgment.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. Wooten began working for Franklin, which is located in Chickasaw County, Mississippi, in 1999. Her first job at Franklin was assembling metal parts. She described this work as picking up a metal washer from a bin, placing the washer on a metal part, hitting a petal that caused a rivet machine to permanently place the washer on the metal part, then pushing the metal part down the line to the next person. This work was repetitive and required her to lift five to ten pounds. She stayed at this position for approximately one-and-a-half years, before starting as the rivet-machine operator. As a rivet-machine operator, Wooten’s responsibilities were to retrieve bins of metal seat plates, take a seat plate out of a bin, place it on one of two machines that she was operating, place various pins in the seat plate using the rivet machine, and then deposit the seat plate into another bin.
 
 [1]
 

 ¶ 3. Wooten was working as a rivet-machine operator when she was injured on February 16, 2004. Wooten described her injury as sharp pains going through her wrist causing an inability to lift anything. Dr. Bobby Smith initially examined Wooten. He placed her on restricted work duty and referred to her an orthopedic surgeon. Wooten was then examined by Dr. Alex Bigighaus, an orthopedic surgeon. Dr. Bigighaus prescribed medication, placed her in a brace, and recommended physical therapy. These prescriptions did not relieve Wooten’s pain, and a first dorsal extensor compartmental release was performed on April 2, 2004, by Dr. Bigi-ghaus. On April 13, 2004, Dr. Bigighaus reported that Wooten had no complaints and minimal discomfort in her surgically repaired hand. On April 22, 2004, Dr. Bigighaus opined that Wooten could return to work restricted to light duty. Approximately one month later, on May 21, 2004, Dr. Bigighaus concluded that Wooten had reached maximum medical improvement and found no medical reason for why she had not returned to work.
 

 
 *1184
 
 ¶ 4. Following the May 21, 2004, examination, Wooten returned to work and was placed in the poly-glue plant. Her duties included retrieving the poly parts, placing them on a machine, gluing the parts together, and placing them to the side. She stayed at this position for eight to nine weeks. Wooten testified that these duties caused her hands to swell. She then decided to go see Dr. Kurt Thorderson.
 

 ¶ 5. Dr. Thorderson had previously examined and performed surgery on Wooten’s left hand. Upon his examination of Wooten, Dr. Thorderson noticed some mild swelling and tenderness on Wooten’s surgically repaired right hand. He opined that Wooten had flexor carpi radialis tunnel syndrome and gave her a cortizone shot. Dr. Thorderson opined that Wooten had reached maximum medical improvement on September 23, 2004. He gave her a zero percent impairment rating and placed her on a two-pound permanent weight-lifting restriction. Wooten returned to Franklin after being examined and diagnosed by Dr. Thorderson. She informed Franklin’s personnel about the restrictions that were placed on her by Dr. Thorderson, but Franklin did not have a position available with those restrictions; Franklin sent Wooten home.
 

 ¶ 6. Thereafter, Wooten filed her petition to controvert, and a subsequent motion to compel payment or, in the alternative, for an independent medical examination. After hearing arguments, the ALJ ordered that Wooten be examined by Dr. Mark Harriman. Dr. Har-riman performed an independent medical examination of Wooten on April 5, 2005. Dr. Harriman opined that Wooten had a normal exam, with no swelling and a normal range of motion. He further noted that he thought it was very unusual for Wooten to have a permanent two-pound weight restriction, given her type of surgery and healing. Dr. Harri-man recommended that Wooten return to work full time with no restrictions.
 

 ¶ 7. After hearing lay and medical testimony, the ALJ denied Wooten’s petition for permanent disability benefits.
 
 [2]
 
 Wooten appealed the ALJ’s decision to the Commission, which affirmed the ALJ’s denial for permanent disability benefits. Wooten appealed the Commission’s decision to the Chickasaw County Circuit Court, which affirmed the Commission’s decision. Aggrieved, Wooten appeals arguing that: (1) the Commission’s reliance on Dr. Bigighaus’s and Dr. Harriman’s reports rather than Dr. Thorderson’s report was arbitrary and capricious, and (2) Wooten is entitled to permanent disability benefits.
 

 STANDARD OF REVIEW
 

 ¶ 8. “It is well settled that the Commission is the finder of fact and if their findings are based on substantial evidence they will be affirmed.”
 
 Bracey v. Packard Elec. Div., General Motors Co.,
 
 476 So.2d 28, 29 (Miss.1985). “If the Commission’s decision and findings of fact are supported by substantial evidence, then we are bound by them even if we would have been convinced otherwise.”
 
 Neill v. Waterway, Inc./ Team Am.,
 
 994 So.2d 196, 199(1113) (Miss.Ct.App.2008). “We will only reverse the Commission’s rulings where findings of fact are unsupported by substantial evidence, matters of law are clearly erroneous, or the decision was arbitrary and capricious.”
 
 Levi Strauss & Co.
 
 
 *1185
 

 v. Studaway,
 
 930 So.2d 481, 484(¶ 10) (Miss.Ct.App.2006).
 

 DISCUSSION
 

 I. Whether the Commission’s findings were arbitrary and capricious.
 

 ¶ 9. Wooten argues that the Commission’s finding that Dr. Bigighaus’s and Dr. Harriman’s opinions were more persuasive than Dr. Thorderson’s opinion was arbitrary and capricious. She asserts that because Dr. Thorderson had examined and operated on her in the past and was in the best position to evaluate her condition, the Commission should have given his diagnosis and opinion more weight than Dr. Bigi-ghaus’s and Dr. Harriman’s opinions.
 

 ¶ 10. The supreme court has faced similar arguments. In
 
 Hardaway Co. v. Bradley,
 
 887 So.2d 793, 796(¶14) (Miss.2004), the claimant argued that the doctor treating his injury should have been given more weight than two doctors performing independent medical evaluations. The ALJ acknowledged that the claimant’s doctor had been treating him for a longer period of time, but she found the other two doctors’ opinions more probative.
 
 Id.
 
 On appeal, the supreme court affirmed the Commission’s decision, which affirmed the ALJ’s decision, because its findings were based on substantial evidence, and it was not arbitrary and capricious.
 
 Id.
 
 at (¶ 16).
 

 ¶ 11. This Court went through a lengthy discussion and analysis with regard to this issue in
 
 Manning v. Sun-beam-Oster Household Products,
 
 979 So.2d 736 (Miss.Ct.App.2008). In
 
 Manning,
 
 the claimant argued that an ALJ, when faced with opinions from two equally competent physicians, should defer to the treating physician, relying primarily on
 
 South Central Bell Telephone Co. v. Aden,
 
 474 So.2d 584 (Miss.1985).
 
 Manning,
 
 979 So.2d at 741(¶ 16). Upon reading
 
 Aden,
 
 this Court found no rule dictating that the ALJ is required to defer to the opinion of a patient-selected or treating physician.
 
 Id.
 
 at 742(¶ 20). Thus, this Court found no merit to the claimant’s argument that a treating physician’s opinion should be given more weight.
 
 Id.
 
 at 744(¶ 28).
 

 ¶ 12. Even more recently, this Court affirmed the Commission’s reliance on an independent medical evaluation over a treating physician in
 
 Daniels v. Peco Foods of Mississippi, Inc.,
 
 980 So.2d 360 (Miss.Ct.App.2008). There, the Commission heard testimony of both doctors, and it found the independent medical evaluation more persuasive because the independent medical examiner reviewed the patient’s history more extensively than the regular, treating physician.
 
 Id.
 
 at 365(¶ 16). This Court deferred to the Commission’s finding because the Commission is the finder and trier of fact, and “it is [the Commission’s] job to evaluate and weigh the evidence,” and affirmed the Commission’s ruling.
 
 Id.
 

 ¶ 13. A review of the above cases dictates that the Commission is not required to defer to the opinion and report of the claimant’s treating physician. It is permitted to rely on the opinion of an independent medical examiner, even if that doctor has only examined the claimant once.
 

 ¶ 14. In the case at bar, Dr. Bigi-ghaus performed the surgery on Wooten, and after continuously examining Wooten for approximately one-and-a-half months after her surgery, he determined that Wooten could return to work. Dr. Bigi-ghaus could be considered Wooten’s treating physician for this injury, as he examined Wooten more than any other doctor and performed the surgery on Wooten’s right hand. However, Dr. Thorderson placed Wooten on a two-pound, permanent weight restriction. In his deposition, Dr.
 
 *1186
 
 Thorderson testified that the two pounds was an arbitrary number, and the restriction could be increased to three or five pounds. In order to resolve these conflicting opinions, Dr. Harriman was appointed by the ALJ to perform an independent medical examination. Dr. Harriman took x-rays of Wooten’s hand and reviewed Wooten’s medical history with respect to her right hand. In conclusion, Dr. Harri-man opined that Wooten could return to work with no restrictions. After reviewing the reports and testimony of each doctor, the Commission found that Drs. Bigi-ghaus’s and Harriman’s opinions to be more persuasive than Dr. Thorderson’s opinion. As this Court has repeatedly stated, the Commission is the finder and trier of fact, and “it is [the Commission’s] job to evaluate and weigh the evidence”; it is not ours.
 
 Id.
 
 We find that the Commission’s finding is not arbitrary and capricious, and it is supported by substantial evidence. Accordingly, this assignment of error is without merit.
 

 II. Whether the Commission was correct in finding that Wooten was not permanently disabled.
 

 ¶ 15. Wooten argues that the Commission erred in not concluding that she was permanently disabled. She claims that the weight of evidence showed that she suffered a total occupational loss of her hand, requiring an award for permanent disability benefits. Wooten cites
 
 Meridian Professional Baseball Club v. Jensen,
 
 828 So.2d 740 (Miss.2002) to support her proposition. In the ever popular
 
 Jensen,
 
 the supreme court ruled that “where a permanent partial disability renders a worker unable to continue in the position held at the time of injury, ... such inability creates a rebuttable presumption of total occupational loss of the member, subject to other proof of the claimant’s ability to earn the same wages which the claimant was receiving at the time of injury.”
 
 Id.
 
 at 747 (V21).
 

 ¶ 16. At the time of Wooten’s injury, she was employed as a rivet-machine operator with an average weekly wage of $455.98. After rehabilitating from surgery, Wooten contacted Franklin about returning to work as a rivet-machine operator. However, Wooten’s position as rivet-machine operator had already been filled. She then worked in the poly-glue department, earning an average weekly wage of $317.88. She testified, that given the permanent work restrictions placed on her by Dr. Thorderson, she would have been unable to return to work at Franklin as a rivet-machine operator. Wooten argues that this created a rebuttable presumption of total occupational loss which Franklin failed to rebut, thus entitling her to two hundred weeks of compensation.
 

 ¶ 17. In denying permanent disability benefits, the Commission reviewed the testimonies of Wooten’s doctors, Wooten, and a general manager at Franklin. Dr. Bigi-ghaus, Wooten’s treating physician, opined that Wooten’s surgically-repaired hand was completely healed, finding no tenderness or crepitation in his final examination. He concluded that there was no reason why Wooten could not return to work. This assessment was echoed by Dr. Harri-man based upon his independent medical evaluation of Wooten. Contrarily, Dr. Thorderson placed a two-pound permanent weight restriction on Wooten. On cross-examination during his deposition, Dr. Thorderson stated the intention of his diagnosis was to find that Wooten did not have any permanent disability. He assigned the weight restriction to prevent Wooten from having further, similar claims and to prevent her from hurting herself or others. More importantly, Dr. Thorderson testified that he arbitrarily selected the two-pound weight restriction. He stated
 
 *1187
 
 that he had no reason why he chose two pounds, and he could have selected three pounds or five pounds. He further stated that he had no problem with Wooten lifting three pounds.
 

 ¶ 18. Permitting Wooten to lift three pounds would allow her to perform the duties of rivet-machine operator. Franklin’s general manager of their mechanism division testified that a rivet-machine operator would have to lift parts weighing 2.8 pounds at most, clearly within the three-pound limit placed by Dr. Thorderson.
 

 ¶ 19. In summation, all three doctors testified that Wooten could perform the duties of rivet-machine operator post-injury; two doctors opined that Wooten should have no work restrictions, and the third doctor stated he had no problem with a three-pound lifting restriction, which is more than the heaviest part Wooten would have to lift at Franklin as a rivet-machine operator. Thus, Wooten could have returned to work as a rivet-machine operator after her surgery.
 

 ¶ 20. Accordingly, we find that the Commission’s decision to deny Wooten permanent disability benefits is supported by substantial evidence. Therefore, this issue is without merit.
 

 ¶ 21. THE JUDGMENT OF THE CHICKASAW COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. MAXWELL, J, NOT PARTICIPATING.
 

 [1]
 

 . Prior to her work at Franklin, Wooten held various jobs including sewing gloves, sewing children’s clothing, harness inspector and re-pairperson, and a sales clerk.
 

 [2]
 

 . The ALJ also gave Franklin a credit for the temporary disability payments it was making to Wooten pursuant to a separate ALJ's order requiring Franklin to pay Wooten $90.75 per week, retroactively from June 1, 2004, until Wooten submitted to an independent medical examination or until further order of the Commission.