GRIFFIS, P.J.,
for the Court:
¶ 1. Margaret Moeller appeals the decision of the Mississippi Workers’ Compensation Commission that determined her mental-health issues were not aggravated by an on-the-job shoulder injury she sustained. In this appeal, she argues that the Commission did not properly assess the weight of the substantial evidence when it deferred to the opinion of an independent medical examiner over Moeller’s treating physician. We find no error and affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. Moeller was employed by the Mississippi Department of Human Services (MDHS). On December 22, 1999, Moeller suffered an on-the-job injury when she hurt her shoulder lifting a box.
¶ 3. Moeller filed a petition to controvert with the Commission. The petition alleged that the shoulder injury, along with other work-connected factors, resulted in mental and psychological injury to Moeller. MDHS and its insurance carrier, the Mississippi Workers’ Compensation Trust Fund (MWCTF), filed a response that admitted Moeller’s injury to her shoulder.
*697 ¶ 4. Moeller subsequently sought treatment for anxiety and depression with various providers. First, Moeller began to see Dr. Ben Root, a psychiatrist, in 2000. Dr. Root diagnosed Moeller with a single episode of major depression, which included complaints of trouble with insomnia, difficulty concentrating, and a depressed mood. Dr. Root testified that Moeller mentioned other problems as well, which included family issues, being held at gunpoint by a supervisor in 1999, and pending litigation.
¶ 5. Next, Moeller saw Dr. Angela Koestler, a psychologist, on May 16, 2001. Dr. Koestler treated Moeller from May 2001 to December 2003, and diagnosed her with having an adjustment disorder with anxiety and depressed mood. Dr. Koestler’s records, like Dr. Root’s, noted that Moeller related her mental injuries and physical complaints to stressors related to pain, family issues, being held at gunpoint by a supervisor in 1999, and litigation. Dr. Koestler opined that Moeller had a tendency to be dependent and overly reliant on medical personnel, but that she had no major personality disturbances. Dr. Koestler discharged Moeller from her care after she resumed treatment with Dr. Root.
¶ 6. MDHS and MWCTF first referred Moeller to Dr. Edward Manning for a psychiatric evaluation on March- 9, 2005, pursuant to Mississippi Code' Annotated section (1) (Supp.2012). According to Dr. Manning’s report, Moeller stated that she had been in an automobile accident and suffered a head injury. She also told Dr. Manning that she had been advised not to disclose the information about her physical and mental history. Dr. Manning determined that, because of Moeller’s refusal to cooperate, the interview had been compromised, as he might have trouble accepting the veracity of her statements.
¶ 7. After review of the report from Dr. Manning, MDHS and MWCTF filed a motion to have Moeller undergo a psychiatric evaluation by a medical examiner of their choice. Subsequently, the administrative judge (AJ) ordered Moeller to submit to an examination by Dr. Thomas Boll, a board certified psychologist and neuropsychologist. Dr. Boll issued a report that indicated that Moeller had no work restrictions, that she had no neuropsychological deficits, and that it was not possible to attribute her psychiatric difficulties to her 1999 shoulder injury. Dr. Boll did, however, note that because he could not determine the validity of Moeller’s allegations, he assigned the diagnosis of depressive disorder and a need for ongoing psychiatric intervention.
¶ 8. As a result of Dr. Boll’s report, MDHS and MWCTF filed a motion to suspend Moeller’s benefits. The, motion alleged that Moeller was not disabled, was at maximum medical improvement, and had no work restrictions. The AJ denied their motion. Moeller applied for a lump-sum payment of her indemnity benefits, which was granted.
¶ 9. Dr. Root testified that he had been treating Moeller almost continuously since 2002, and his notes were basically the same at every appointment. He testified that he did not think Moeller “had plateaued out yet,” or was at maximum medical improvement. Dr. Root also testified that his treatment of Moeller included a regimen of medications, including Sonata for insomnia, Tranxene for anxiety, and Topamax as a mood stabilizer, which were prescribed monthly.
¶ 10. The AJ ordered the parties to agree on a physician for an independent psychiatric evaluation of Moeller. MDHS and MWCTF identified Dr. Gregory Gordon, at University of Mississippi Medical Center, who is board certified in psychia *698 try and internal medicine, as a potential physician to perform the examination on Moeller. Moeller failed to respond to this request. The AJ subsequently ordered Moeller to submit to an evaluation by Dr. Gordon to resolve whether Moeller’s work-connected injuries to her hand and shoulder significantly aggravated, accelerated, or contributed to her current mental impairment. Dr. Gordon was also asked to give an opinion on whether Moeller was at maximum medical improvement; and whether she needed continuing medical treatment, including psychotherapy and medication.
¶ 11. Dr. Gordon reviewed Moeller’s medical records and met with Moeller for an eighty-minute session for Moeller’s examination. Dr. Moeller opined in his report that Moeller was not suffering from major depression, and that there was no connection between her work-related injuries and the treatment she was receiving for her mental state. Dr. Gordon further testified that Moeller had no need for continuing psychiatric care. Dr. Gordon was of the opinion that the medications prescribed by Dr. Root, which included Topamax, Tranxene, and Sonata, were not intended for treatment of depressive disorder.
¶ 12. Based on the evidence presented, the AJ issued an order that found Moel-ler’s work-related shoulder injury at MDHS did not significantly aggravate, accelerate, or contribute to her current mental state or need for medication as prescribed by Dr. Root. The AJ noted in the order that neither Dr. Root’s records nor his deposition testimony constituted competent, credible evidence that Moeller’s work injury significantly contributed to her current mental state or need for mental-health treatment. The AJ relied on the report of Dr. Gordon in making this ruling, and stated that Dr. Gordon’s opinion was corroborated by the evaluations of Dr. Boll and Dr. Koestler.
¶ 13. Moeller subsequently filed her motion for reconsideration, which was denied by the AJ. Finally, she filed her petition for full commission review. The full Commission affirmed the order that denied her motion for reconsideration. Aggrieved, Moeller timely filed her notice of appeal.
STANDARD OF REVIEW
¶ 14. This Court employs a substantial-evidence standard of review to resolve a workers’ compensation case; however, the standard of review is de novo when the issue is one of law and not of fact. Hugh Dancy Co. v. Mooneyham, 68 So.3d 76, 79 (¶ 6) (Miss.Ct.App.2011) (citation omitted). “Absent an error of law, we must affirm the Commission’s decision if there is substantial evidence to support the Commission’s decision.” Id. (citing Shelby v. Peavey Elecs. Corp., 724 So.2d 504, 506 (¶ 8) (Miss.Ct.App.1998)). “In a workers’ compensation case, the Commission is the trier and finder of facts.” Id. (citing Radford v. CCA-Delta Corr. Facility, 5 So.3d 1158, 1163 (¶ 20) (Miss.Ct.App.2009)). If the Commission’s order is supported by substantial evidence, this Court is bound by the Commission’s determination even if the evidence would convince us otherwise if we were the fact-finder. Id. (citation omitted). “On the other hand, reversal is proper where the Commission has misapprehended the controlling legal principles, as the standard of review in that event is de novo.” Id. (citation omitted).
ANALYSIS
¶ 15. Moeller argues that the Commission erred by upholding the AJ’s order that found Moeller’s work-related shoulder injury at MDHS did not significantly aggravate, accelerate, or contribute *699 to her current mental state or need for medication as prescribed by Dr. Root. Specifically, Moeller argues that the Commission erroneously disregarded the testimony of Dr. Root, who had treated Moeller continuously since 2002, and relied on the opinion of Dr. Gordon, who had only seen Moeller on one occasion, in making its decision.
¶ 16. The Commission has a duty, as the finder of fact in a workers’ compensation case, to evaluate and determine the weight of the evidence. Daniels v. Peco Foods of Miss., Inc., 980 So.2d 360, 365 (¶ 16) (Miss.Ct.App.2008) (citation omitted). Because the Commission is the fact-finder and also the judge of witness credibility, appellate courts cannot reweigh the evidence and are thus highly deferential to the Commission’s decisions. Short v. Wilson Meat House, LLC, 36 So.3d 1247, 1251 (¶ 23) (Miss.2010).
¶ 17. Further, Mississippi law provides that the Commission is permitted to rely on the opinion of an independent medical examiner, even if that doctor has only examined the claimant once, and “is not required to defer to the opinion and report of the claimant’s treating physician.” Wooten v. Franklin Corp., 9 So.3d 1182, 1185 (¶ 13) (Miss.Ct.App.2009); see also Manning v. Sunbeam-Oster Household Prods., 979 So.2d 736, 741 (¶ 18) (Miss.Ct. App.2008); Richardson v. Johnson Elec. Auto. Inc., 962 So.2d 146, 152 (¶ 16) (Miss.Ct.App.2007). Most importantly, this Court has held that to find that the Commission is required to always comply with a treating physician’s opinion would be contrary to Mississippi workers’ compensation law. Richardson, 962 So.2d at 152 (¶ 15) (citation omitted). “While a treating physician’s opinion is without question of great import,” the Commission is not “required to give it any greater weight than other physicians’ opinions.” Id. at (¶ 16).
¶ 18. Here, we find that the Commission correctly evaluated the weight of the evidence when it upheld the AJ’s decision to reject the testimony of Moeller’s primary treating physician and credited the testimony of the independent medical examiner. The AJ noted that although Dr. Root had seen Moeller for more than 280 psychotherapy sessions and had spoken to her more than 100 times on the phone, his clinic notes did not illustrate the treatment that he provided or the efficacy of his treatment. Dr. Root’s records did, however, indicate repeatedly that Moeller was not suicidal and that she had done psychotherapy and had little change in her medications. The AJ’s order also noted that even though Moeller had returned to work and remained employed, Dr. Root did not find that she had reached maximum medical improvement. Further, the AJ noted that Dr. Root erroneously identified Moeller’s work injury as being held at gunpoint by a supervisor. The AJ correctly decided that the injury that was the basis for Moeller’s claim was the injury to her right shoulder and not being held at gunpoint by a supervisor, which was never reported or proven.
¶ 19. The evaluation of Dr. Gordon, the independent medical examiner, contradicts Dr. Root’s medical opinion and is substantiated by other medical evidence. Dr. Gordon evaluated Moeller and concluded that she did not have major depression or any other psychiatric condition, that her work-connected hand and shoulder injuries did not contribute in any way to her current mental state, and that she did not need ongoing treatment for her mental state. Dr. Gordon placed Moeller at maximum medical improvement as of late 2006 or early 2007. Further, as the AJ’s order explained, Dr. Gordon’s opinions were supported by the examinations of Dr. Koestler and Dr. Boll. Dr. Koestler noted that *700 Moeller related numerous physical complaints and problems to various other personal issues occurring in her life. Dr. Koestler concluded that Moeller had a tendency to be dependent and overly reliant on medical personnel but otherwise had no major personality disturbances. Dr. Boll examined Moeller and concluded that she did not have a neurological impairment or a neurocognitive deficit. He also concluded that psychiatric problems could in no way be attributed to the injury to Moel-ler’s shoulder.
¶ 20. Based on a review of the record, we find that the Commission’s decision was based on substantial evidence. Therefore, we affirm the Commission’s decision.
¶ 21. THE JUDGMENT OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.