WILSON, J.,
for the Court:
¶ 1. Jeremy Hamilton appeals from a decision of the Mississippi Workers’ Compensation Commission finding that Hamilton’s former employer, Southwire Company,[1] is not responsible for certain medical treatment and prescription medications. Because the Commission’s decision is supported by substantial evidence, we affirm.
FACTS AND PROCEDURAL HISTORY
'¶ 2. In November 2005, Hamilton suffered compensable injuries to his foot and ankle, including a stress fracture and tendon strain, while in the course of his employment with Southwire. Hamilton maintains that his foot and ankle injuries also resulted in back pain; however, Southwire has denied that Hamilton suffered any compensable back injury. Hamilton was eventually diagnosed with “complex regional sympathetic dystrophy” (RSD), a chronic pain condition, and in 2006 he had a spinal cord stimulator implanted. South-wire voluntarily paid temporary total disability benefits. In 2012, Hamilton filed a petition to controvert, and the parties eventually settled his indemnity claim. This appeal relates only to a motion to compel medical treatment that Hamilton filed in March 2013..
¶ 3. In November 2012, Hamilton reported increased leg and lower back pain and sought treatment from Dr. Samuel Polk. He also complained of pain and discomfort in his lower back related to the spinal stimulator. Dr. Polk referred him to Dr. Daniel Hoit for a surgical “stimulator revision,” but Southwire did not approve the procedure. In his motion to compel, Hamilton asked the Commission to *1278 order Southwire to approve treatment by Dr. Hoit.
¶ 4. Hamilton was also seeing Dr. Kevin Vance for pain management. Dr. Vance had prescribed the following medication: Depakote (as a mood stabilizer), Methadone, Lyrica, Baclofen, Celebrex, Provigil, Testim, Cialis, and Sprix. In his motion to compel, Hamilton allegéd that Southwire was either denying or delaying approval of these drugs. Hamilton asked the Commission to require Southwire to approve and pay for the drugs. '
¶ 5. Dr. Rahul Vohra performed an employer’s medical evaluation on Hamilton. Dr. Vohra concluded that Hamilton did-not have RSD because he had a normal objective physical examination and, for several years prior, his examinations by other physicians had been objectively normal. . Dr. Vohra concluded that Hamilton had reached maximum medical. improvement and had no residual impairments or restrictions to his right leg, foot, or ankle. Dr. Vohra suggested that Hamilton’s issues might be psychological, rather than physical, and he recommended several'procedures — a myelogram, a post-myelogram CT of the lumbar spine, a bilateral lower extremity EMG, and "'nerve conduction studies — to identify or rule out' possible physical ■ causes of Hamilton’s reported pain. TheSe tests were administered and, according to Dr. Vohra, revealed no physi-cal cause of Hamilton’s reported pain.
¶ 6. Based on his findings, Dr. Vohra recommended a psychological assessment. He further recommended that if the assessment revealed a somatization disorder, then Hamilton should discontinue his use of pain medications and attempt to limit his dependence on the medical system.
¶ 7. Dr. Mark Webb, a psychiatrist, performed an independent medical evaluation on Hamilton. Dr. Webb concluded that Hamilton’s present complaints are mental, not physical. In addition, Dr. Webb found that Hamilton suffered from bipolar disorder, which caused him to exaggerate his somatic complaints. Dr. Webb noted that a prior psychiatrist had treated Hamilton for bipolar disorder and prescribed medication. Dr. Webb also noted that Hamilton had been hospitalized for psychiatric reasons twice previously. Dr. Webb recommended psychiatric treatment and a tapering off of Hamilton’s pain medications.
¶ 8. After reviewing Dr. Webb’s report, Dr. Vohra concluded that Hamilton’s spinal stimulator whs unnecessary and could be turned off. Dr. Vorha' opined that, from a medical standpoint, further surgery to remove the stimulator was unnecessary.
¶ 9. • Based on the opinions and findings of Dr. Vohra and Dr. Webb, Southwire opposed Hamilton’s motion to compel medical treatment. Southwire argued that Hamilton could not show that the requested treatment and medications were causally related to his 2005 work injury. Therefore, Southwire asked the .Commission to deny Hamilton's motion. However, on May 10, 2013, an administrative-judge (AJ). of the Commission granted Hamilton’s motion. The AJ ordered Southwire to approve the referral to Dr. Hoit for evaluation and treatment related to a possible stimulator revision. The AJ also ordered Southwire to pay for all prescription medications identified in Hamilton’s motion to compel.
¶ 10. On May 17, 2013, Southwire filed a limited motion to reconsider in which it asked the AJ to revisit her order to the extent that it compelled Southwire to pay for Cialis and Testim, which are erectile dysfunction '(ED) medications. Southwire argued that there was no evidence of a causal link between Hamilton’s compensa-ble injury and his need for those medications. Hamilton filed a response and attached a letter from his attorney to Dr. *1279 Vance. In the letter, Hamilton’s attorney-asks Dr. Vance, “[I]s it your opinion that [Hamilton’s erectile] dysfunction is related to the continued use of the [pain] medications [prescribed by him?]” Underneath the question, there are lines to indicate “yes” or “no.” The “yes” line is marked with an “x,” presumably by Dr. Vance.
¶ 11. On May 30, 2013, Southwire filed a petition for review by the full Commission.- Southwire’s petition challenged all aspects of the AJ’s order. Southwire’s petition also specifically advised the full Commission of its pending .motion to. reconsider. Southwire explained its reasons for filing both a motion and a petition- as follows:
[We] have -filed a Motion to. Reconsider as to the issue-regarding approval and payment of erectile dysfunction medication, which was part of Claimant’s original Motion to Compel. This tolls the statute of limitations for appeal, but it is unclear as to whether it tolls appeal just as to the ED issue or all of the medical treatment the Claimant compelled; Thus, this Petition is being filed out of an abundance of caution.!
Subsequently, Southwire filed a brief in support of its petition, Hamilton filed a letter brief in response, and the full Commission heard oral argument on August 26, 2013.
¶ 12. On September 4, 2013, Hamilton and Southwire filed a petition to approve a settlement of Hamilton’s indemnity claim only. On September 24, 2013, the Commission approved the settlement. .
¶ 13. The Commission mistakenly believed that the settlement resolved the'issues raised in Hamilton’s motion "to compel medical treatment. Thus, six months later the Commission still had not ruled on the petition for review. Nor had the AJ ruled on Southwire’s motion to reconsider. On March 20, 2014; Hamilton wrote to the full Commission to clarify that the parties’ settlement resolved only the indemnity portion of Hamilton’s claim. Hamilton therefore requested that the full Commission “fast track” its ruling on Southwire’s petition.
¶ 14, On August 21, 2014, the full Commission entered an order affirming in part and reversing in part the AJ’s order. The Commission found “persuasive” Dr. Voh-ra’s opinion that Hamilton no longer needed a spinal stimulator. Accordingly, the Commission reversed the part of the AJ’s order compelling Southwire to approve treatment related to a possible surgical revision of the stimulator. The Commission affirmed the AJ’s order requiring Southwire "to continue páying for medications other than ED medications; however, the Commission also directed South-wire “to authorize treatment ... to assist [Hamilton] in tapering off [those] medications,” and the Commission ruled that Southwire was not required to pay for further treatment by Dr, Vance. Finally, the Commission ruled that Southwire was not required to pay. for Hamilton’s ED medications because there was “no medical evidence” that his need for those drugs Was causally related to his work injury. Hamilton filed a timely notice of appeal from the Commission’s ruling.
DISCUSSION
I. Whether This Court Has Jurisdiction to Decide the Appeal
¶ 15. Before discussing the merits of the appeal, we first address a jurisdictional question on which the Court ordered the parties to file supplemental briefs. Neither party raised the issue, but an appellate court must address issues of jurisdiction on its own motion. See, e.g., Gallagher v. City of Waveland, 182 So.3d 471, 474 (¶ 13) (Miss.Ct.App.2015), cert. denied, 181 So.3d 1010 (Miss.2016). The issues identified in our prior order were whether *1280 the Commission had jurisdiction to decide Southwire’s petition for review, whether this Court has jurisdiction to decide Hamilton’s appeal, and whether administrative remedies were exhausted. The reason for our order was that the AJ never ruled on Southwire’s motion to reconsider, although the full Commission ultimately ruled bn the only issue raised in that motion. Having considered these issues, we conclude that the Commission had jurisdiction to decide Southwire’s petition, all administrative remedies were exhausted, and' this Court now has jurisdiction to decide this appeal.
¶ 16. The Mississippi Supreme Court has explained that “[t]he Legislature vested full responsibility for the handling of [workers’ compensation claims] in the [Mississippi Workers’ Compensation] Commission.” Walker Mfg. Co. v. Cantrell, 577 So.2d 1243, 1246 (Miss.1991). To this end, the Legislature “committed to the Commission the duty of prescribing ‘the details of practice and procedure in the settlement and adjudication of claims.’” Id. (quoting Miss.Code Ann; § 71-3-47 (1972)). “Pursuant to this authority, the’ Commission has developed and evolved a procedure whereby hearing officers”—i.e., administrative judges (AJs)— “go out into the field and receive testimony and other evidence and make initial awards, subject always to review and modification by the Commission itself.” Id. “What must be kept always in mind is that each AJ is a member of the Commission’s administrative staff. He or she is but a ‘facility* through which the 'Commission discharges its legislative mandate.” Id. The Commission is the ultimate finder of fact, and it may conduct additional investigations or hearings and receive additional live testimony or other evidence before rendering a decision. See id. at 1246^47. Therefore, this Court reviews, and gives deference to, the Commission’s decision, not that of the AJ. See id.
¶ 17. The Supreme Court has observed that “[t]he process and structure [of review by the full Commission of a decision by an AJ] bear a surface similarity to that of trial and appellate court, but this view is factually and legally mistaken.” Id. at 1246. Indeed, the Court has said that such an “analogy is clearly unfounded.” Day-Brite Lighting Div., Emerson Elec. Co. v. Cummings, 419 So.2d 211, 213 (Miss.1982). The fact that the Commission is not an appellate tribunal has important implications for the Commission’s jurisdiction. Specifically, “[fjrom the moment of the filing - of a workmen’s compensation claim, jurisdiction is vested totally, completely, and exclusively in the ... Commission itself. As previously noted, ... the [AJ] is merely a ‘facility* of the [Commission. As such, jurisdiction cannot ‘pass back and forth’ within a single entity.” Id. (empha'sis added).
¶ 18. Thus, in this case,- the Commission possessed total and complete jurisdiction over Hamilton’s claim “[f]rom the moment of [its] filing.” Id. The Commission never lost jurisdiction to the AJ because the AJ acted only as a “facility” of the Commission itself. Id. Because the Commission maintained jurisdiction throughout, the Commission had authority to enter a final decision in the case regardless of whether the AJ had ruled on South-wire’s motion to reconsider. Stated differently, the Commission had discretion as to whether and when to rule on Southwire’s petition for review. Furthermore, this Court reviews the decision of the Commission, not the AJ. See, e.g., Smith v. Jackson Constr. Co., 607 So.2d 1119, 1123-24 (Miss.1992). Therefore, the absence of a ruling by the AJ on the motion to reconsider became moot once the full Commission issued a final decision. The Commission’s decision disposed of- all remaining issues in the case. Therefore,. the Com *1281 mission’s decision was a final decision, and it is reviewable by this Court on appeal. See Miss.Code Ann. § 71-3-51 (Rev.2011).
¶ 19. Moreover, Southwire clearly exhausted its administrative remedies by obtaining a final judgment from the Commission. Cf. Harper v. Cal-Maine Foods Inc., 43 So.3d 401, 403 (¶ 5) (Miss.2010) (“claimants are réquired to exhaust their administrative remedies, i.e., obtain a final judgment from the Commission prior to instituting a bad-faith action for failure to pay benefits” (quotation marks omitted)). Hamilton then properly and timely appealed that final decision of the Commission. There is no administrative remedy left to exhaust. The Commission has resolved, fully and finally, all issues remaining in the case and all issues raised in Hamilton’s appeal.
¶ 20. In addition, we cannot agree with the dissent that the Supreme Court’s decision in Day Detectives Inc. v. Savell, 291 So.2d 716, 720-21 (Miss.1974), requires dismissal of this appeal. A fair reading of Saveli demonstrates otherwise. In Saveli, the claimant filed a “motion to withdraw” (essentially, a motion to reconsider) two days after the AJ’s initial ruling, the AJ denied the motion to withdraw several months later, and the claimant then promptly filed a petition for review before the full Commission. See id. The issue that the Supreme Court addressed in Sa-veli was whether the claimant’s petition for review was barred pursuant to Mississippi Code Annotated section 71-3-47, which provides that a decision issued by an AJ “shall be final unless within twenty (20) days a request or petition for review by the full [Cjommission is filed.” The Court held that the claimant’s appeal was not barred because his initial “motion to withdraw” “tolled’ the running of the twenty-day time within which a petition for review by the full [Cjommission should be filed.” Savell, 291 So.2d at 721. The Court explained that “[tjhere was no final order of the [AJ] from which to appeal until [the claimant’s] motion [to withdraw] was overruled.” Id.
¶21. Although Saveli establishes that the filing of ⅞ motion to reconsider tolls the twenty-day period for appealing an AJ’s decision, the Supreme Court did not hold or suggest that the pendency of such a motion deprives the full Commission of jurisdiction. As discussed above, the Commission retains full jurisdiction throughout the case, and the Commission also has authority 'to establish its own rules of practice and procedure. Miss. Code Ann. § 71-3-47 (Rev.2011); Barq’s Bottling Co. v. Broussard, 239 Miss. 561, 566, 124 So.2d 294, 296 (1960). The Commission’s rules permit “either party” to seek review by the full Commission “from any decision by an Administrative Judge.” Miss. Admin. Code § 20-2-1:2:10 (emphasis added). Thus, the Commission may review decisions that are non-final or “interlocutory” in nature. See Mills v. Hercules Inc., No. 001965-G-7667, 2000 WL 1665251, at *3-*4 (Miss. Work. Comp. Comm’n Oct. 16, 2000); John R. Bradley & Linda A. Thompson, Mississippi Workers’ Compensation Law § 6:37 (2015); James L. Robertson, The Strange and Unfortunate Story of Judicial Review of Interlocutory Agency Action in Mississippi, 77 Miss. L.J. 1095, 1123-24 & n. 131 (2008). Nothing in the Workers’ Compensation Act precludes full Commission review of such decisions. Nor does anything in the Act prevent the full Commission from issuing a final decision in the course of reviewing an interlocutory decision by an AJ.[2] And when, as in this case, the Commission enters such a final decision, an aggrieved *1282 party may appeal to this Court. Accordingly, we have jurisdiction to decide this appeal.
¶ 22.' We also note that Southwire not only clearly advised the full Commission that it had filed both a limited motion to reconsider and a petition for review but also explained why. See supra ¶ 11. This is the approach recommended by a well-known treatise, on Mississippi workers’ compensation law. The treatise’s authors note that a motion to reconsider is- not specifically authorized by statute or rule, so they suggest that “[t]he cautious lawyer will file, in the alternative [to a motion to reconsider], a petition for review by the Commission[.]” Bradley & Thompson, supra, § 6:38. In response to Southwire’s petition, Hamilton never suggested that full Commission review was premature. In fact, as noted above, Hamilton later urged the full Commission to “fast track” a decision on the petition, and he then appealed the full Commission’s decision to this Court. Hamilton first took the position that Southwire’s petition was premature only after this Court .raised the issue in our order requiring supplemental briefs.
II. Whether the Commission’s Decision Is Supported by Substantial Evidence
¶ 23. The Supreme Court has summarized the applicable standard of review as follows:
The standard of review in a workers’ compensation appeal is limited to whether the Commission’s decision is supported by substantial evidence. The ... Commission is the trier and finder of facts in a compensation claim, the findings-of the [AJ] to the contrary notwithstanding. This. Court will reverse an order of the ... Commission only where such order is clearly erroneous and contrary to the overwhelming weight of the evidence.
Lott v. Hudspeth Ctr., 26 So.3d 1044, 1048 (¶ 12) (Miss.2010) (citations omitted):
¶ 24. Furthermore, “[w]here there is conflicting medical testimony, the Commission has the responsibility to apply its expertise and determine which evidence .is more credible.” Washington v. Woodland Vill. Nursing Home, 25 So.3d 341, 355 (¶ 33) (Miss.Ct.App.2009) (quoting Wesson v. Fred’s. Inc., 811 So.2d 464, 469 (¶ 23) (Miss.Ct.App.2002)). Therefore, “[w]here medical expert' testimony is concerned, [the Supreme] Court has held that whenever the expert evidence is conflicting, the Court will affirm the Commission whether the award is for or against the claimant.” Raytheon Aerospace Support Servs. v. Miller, 861 So.2d 330, 336 (¶ 13) (Miss.2003) (quoting Kersh v. Greenville Sheet Metal Works, 192 So.2d 266, 268 (Miss.1966)).
¶25. Hamilton raises four issues on appeal. The first two may be combined and restated as whether, in denying his request for treatment by Dr. Hoit, the Commission erred by finding the opinions of Dr! Vohra and Dr. Webb more persuasive than the recommendations of his treating physicians. Next, Hamilton challenges the Commission’s rulings that Southwire must pay for treatment, recommended by Dr. Vohra, to assist him in tapering off his pain medications but is not responsible for continued treatment by Dr. Vánce. Hamilton argues that, in combination, these rulings effectively violate his statutory right to select his own physician. Finally, Hamilton argues that the Commission erred by refusing to compel South-wire to pay for erectile dysfunction medications. We address these issues in turn below. Applying our deferential standard of review, we find no reversible error and affirm.
*1283 A. Treatment by Dr. Hoit
¶26. Hamilton argues that the Commission erred by not compelling Southwire to approve and pay for treatment by Dr. Hoit related to a potential surgical revision of his spinal stimulator. Hamilton quotes and relies on the Supreme Court’s statement in Spann v. Wal-Mart Stores Inc., 700 So.2d 308, 315 (¶ 34) (Miss.1997), that “ease law and [the Workers! Compensation] Act -mandate that as long as a particular treatment is deemed ‘necessary and reasonable’ by a competent treating physician, the employee and carrier are obligated to furnish such treatment” However, in Hardaway Co. v. Bradley, 887 So.2d 793, 797 (¶ 18) (Miss.2004), the Supreme Court held that such selective reliance on this specific “quote misinterprets Spann.” The Court explained:
Spann was not given the surgery simply because his treating physician prescribed it, but because the Commission was not presented with any other credible evidence to the contrary. In Spann, the only difference between the two credible opinions [was] that one felt surgery was necessary, and the other thought there-was a 50/50 chance that surgery would be beneficial.
Hardaway Co., 887 So.2d at 797 (¶ 18) (citing Spann, 700 So.2d at 308, 310). Thus, in Hardaway Co., the Court held that “Spann is distinguishable” and “does not apply” when a competent physician éxamines the claimant and concludes that a proposed treatment is inappropriate. Id.;, accord Manning v. Sunbeam-Oster Household Prods., 979 So.2d 736, 741-44 (¶¶ 16-28) (Miss.Ct.App.2008) (emphasizing that deference to “‘treating’ or patient-selected physicians” is “not required” when there is “credible countervailing evidence”).
¶ 27. Here, Dr. Vohra provided a competent medical opinion that the surgery was not needed or causally related to Hamilton’s work injury. The Commission Was entitled to find his opinion credible and persuasive and to deny Hamilton’s motion to compel medical treatment on that basis. See Hardaway Co., 887 So.2d at 797 (¶¶ 18-20). “[W]henever,” as in this case, “the expert evidence is conflicting, [we] will affirm the Commission whether the award is for or against the claimant.” Miller, 861 So.2d at 336 (¶ 13) (quoting Kersh, 192 So.2d at 268).
28. The foregoing discussion provides a sufficient basis on which to affirm the Commission’s- decision,- but we also note that Spann is distinguishable for the additional reason that it involved a disagreement between a treating physician and a non-treating physician as to whether surgery was an effective and advisable course of treatment for what all agreed was a work-related injury. Here, in contrast, Dr. Yohra’s opinion, supported by Dr. Webb’s opinion, was that Hamilton did not have RSD and that his complaints of pain were manifestations of ■ non-work-related psychological issues, not any work-related injury. The Commission was entitled to find Dr. Vohra’s opinion more persuasive than other evidence in the record.
¶ 29. Finally, we note that the medical records submitted by Hamilton in support of his motion to compel simply recommend a course of treatment or prescriptions. Unlike Dr. Yohra’s opinions, these records do not address specifically the question whether Hamilton’s complaints are related to his original compensable injury. For this reason as well, the Commission was entitled to accept Dr. Vohra’s opinions as more persuasive than other evidence in the record.
B. Treatment by Dr. Vance
¶30. The immediately- preceding discussion applies equally to Hamilton’s arguments that the Commission erred by not *1284 compelling Southwire to pay for continued treatment by Dr. Vance. The Commission obviously credited’ Dr. Vohra’s opinion, shared by Dr. Webb, that Hamilton’s use of the pain medications prescribed by Dr. Vance should be tapered off. For essentially the same .reasons discussed just above, the Commission was entitled to find Dr. Vohra’s opinions more persuasive than the fact that Dr. .Vance was willing to continue Hamilton on the medications.
¶ 31. We also reject Hamilton’s contention that the Commission’s order deprived him of his right to select his own physician under Mississippi Code Annotated section .71-3-15(1) (Supp.2015). That provision requires the employer to “furnish such medical ... treatment ... as the nature of the injury or the process of recovery may require.” Id. (emphasis added). The Workers’ Compensation, Act does not require “payment for services not needed.” White v. Hattiesburg Cable Co., 590 So.2d 867, 870 (Miss.1991). The Commission was entitled to find persuasive and accept Dr. Vohra’s opinion that Dr. Vance’s plan to continue to prescribe pain medication was not required by Hamilton’s 2005 work injury or process of recovery. Therefore, the Commission’s decision not to compel Southwire to continue to pay for Dr. Vance’s treatment was supported by substantial evidence. That the Commission also ordered Southwire to authorize alternative medical treatment — namely, treatment to assist Hamilton in tapering off his use of pain medications — does not render invalid its decision to deny unnecessary treatment.
C. Erectile Dysfunction Drugs
¶32. Finally, Hamilton argues that the Commission erred by finding that there was “no medical evidence” that his prescriptions for certain erectile dysfunction drugs were related to his injury. Hamilton claims the Commission ignored Dr. Vance’s answer to his attorney’s letter. However, “[t]he Commission may even refuse to follow the uncontradicted evidence in the record” if there are apparent “reasons for rejecting” it.. Fortune Furniture Mfg. Co. v. Sullivan, 279 So.2d 644, 647 (Miss.1973) (quoting 3 Arthur Larson, The Law of Workmen’s Compensation § 80.20, at 268-272 (1971)). Here, the Commission was not required to credit something, so conelusory and unsupported as Dr. Vance’s “x” (see supra ¶ 10), even if the “x” was not specifically contradicted.
¶ 33. Moreover, as discussed above, there was substantial evidence before the Commission that Hamilton did not have RSD and that his prescription pain medications were not a necessary medical treatment of his original injury. Dr. Vance’s “x” indicates only that Hamilton’s erectile dysfunction was “related to the continued use of’ those same pain medications. If the pain medications were not a necessary medical treatment of the original injury, it necessarily follows that the ED drugs were not either. • Accordingly, Hamilton’s final issue is also without merit.
CONCLUSION
¶ 34. We have jurisdiction over Hamilton’s appeal, and the Commission’s decision is supported by substantial evidence. Accordingly, we affirm.'
¶ 35. THE JUDGMENT OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, FAIR AND GREENLEE, JJ. CONCUR. JAMES, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY IRVING, P.J.

. Similarly, if our Supreme Court permits an appeal of an interlocutory order denying sum-maty judgment, it may reverse and render a final judgment in favor of the petitioner.