# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-WC-01652-COA

**LOWE'S HOME CENTERS, LLC**                                   APPELLANT

**v.**

**EDWIN SCOTT**                                                APPELLEE

DATE OF JUDGMENT:               10/24/2016
TRIBUNAL FROM WHICH             MISSISSIPPI WORKERS' COMPENSATION
APPEALED:                       COMMISSION
ATTORNEYS FOR APPELLANT:        JILL RENEE MILLER
                                MICHAEL MADISON TAYLOR JR.
ATTORNEY FOR APPELLEE:          BRETT ANDREW FERGUSON
NATURE OF THE CASE:             CIVIL - WORKERS' COMPENSATION
DISPOSITION:                    AFFIRMED: 10/31/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE GRIFFIS, P.J., BARNES AND FAIR, JJ.

### FAIR, J., FOR THE COURT:

¶1.     Edwin Scott developed a staph infection in his spine after receiving epidural injections as treatment for a workplace injury. After being presented with dueling expert opinions, the Mississippi Workers' Compensation Commission found that the infection had resulted from the injections and thus was a compensable injury itself. Lowe's Home Centers, the employer/carrier, contends that Scott's expert should not have been be credited. We disagree and affirm.

### STANDARD OF REVIEW

¶2.     "[R]eview of a decision of the Workers' Compensation Commission is limited to determining whether the decision was supported by substantial evidence, was arbitrary and

capricious, was beyond the scope or power of the agency to make, or violated one's constitutional or statutory rights." *Cook v. Home Depot*, 81 So. 3d 1041, 1044 (¶3) (Miss. 2012) (citation omitted). "Because the Commission is the ultimate fact-finder and judge of the credibility of the witnesses, [an appellate court] may not reweigh the evidence before the Commission." *Id.* at 1044-45 (¶3) (citation omitted). Questions of law, on the other hand, are reviewed de novo. *Ladner v. Zachry Constr.*, 130 So. 3d 1085, 1088 (¶9) (Miss. 2014).

**DISCUSSION**

¶3. Scott injured his lower back while unloading a heavy appliance. He was to be treated with a series of epidural steroid injections. The first was on May 9, 2014, with the second following on May 29, 2014. On May 30, Scott was found to have an epidural abscess in the lower back, a staph infection caused by methicillin-resistant staphylococcus aureus (MRSA) bacteria. The infection necessitated several serious surgeries.

¶4. The factual dispute in this case is causation – whether the injections led to the staph infection. "In workers' compensation cases, the claimant bears the burden of proving by a fair preponderance of the evidence . . . a causal connection between the injury and the . . . claimed disability." *Harper v. Banks, Finley, White & Co. of Miss.*, 167 So. 3d 1155, 1163 (¶19) (Miss. 2015) (citation omitted).

¶5. The expert for Lowe's, Dr. Eric Amundson, a neurosurgeon, testified that infections rarely resulted from epidural injections and that Scott, a diabetic, was especially vulnerable to "spontaneous" infections. He noted that Scott had had two staph infections in the past two

2

years in other parts of his body. Dr. Amundson concluded that the injections were not the cause of Scott's infection.

¶6. On the other hand, Dr. Eric McVey, an infectious disease specialist who treated Scott, testified that he believed the infection was caused by the injections. He based this finding on the timing of the injections and their location, which was a few centimeters from the infection. Dr. McVey noted that "spontaneous" infections do not appear from nowhere, but require staph bacteria to have entered the blood somehow. Because it is not possible to fully sterilize skin prior to an injection, the bacteria could have entered Scott's body from the needle punctures. Alternatively, bacteria already present in the blood could have infected the spine because of inflammation from the injections. Dr. McVey acknowledged that it would be unusual for an infection to result from an epidural infection or for such an infection to progress in some of the ways Scott's did, but in his judgment it was still more likely than not that the infection was caused by the injections.

¶7. Dr. Vivek Barclay, a specialist in anesthesiology and pain management, also treated Scott. He testified that while he could not say the injections caused the infection, he disagreed with Dr. Amundson's opinion that one could say with any confidence that they had not.

¶8. On appeal, Lowe's contends that Dr. McVey's testimony was not reliable for several reasons. First, it contends that Dr. McVey "admittedly had not reviewed the relevant medical records, including the medical records regarding the injections or the MRI films." But

3

Lowe's fails to show how this undermines Dr. McVey's opinion; it does not identify what records McVey should have reviewed, other than the MRI. And while McVey did not look at the MRI itself, he testified that he had relied on the radiologist's report of what it showed and that his examination of Scott was consistent with the report. Dr. McVey never even suggested that he had to review the MRI itself to formulate an opinion on the cause of the infection. Lowe's fails to show how not viewing the MRI itself undermined Dr. McVey's opinion – in fact, McVey seems to have drawn the same conclusions from the radiologist's summary of the MRI that Dr. Amundson reached from looking at the MRI itself; he just disagreed about how much weight to give them in the end.

¶9.    Otherwise, the arguments advanced by Lowe's appear to be an attempt to reweigh the various facts considered by Dr. McVey in reaching his ultimate conclusion – the progression of the infection, the probabilities of a "spontaneous" infection versus introduction of bacteria from the injections, the usual formation and progression of infections of the spine. The record reflects that Dr. McVey considered all of these factors, and he candidly acknowledged that it was a close call; but he still concluded that, more likely than not, the infection resulted from the injections. The weighing of these factors was an exercise of Dr. McVey's professional judgment as an infectious disease specialist, something this Court is in no position to second-guess. And the Commission, as the finder of fact, was entitled to decide whether to credit Dr. McVey's judgment on this matter over that of Dr. Amundson. It is axiomatic that "whenever the expert evidence is conflicting, the [reviewing court] will affirm

the Commission whether the award is for or against the claimant." *Raytheon Aerospace Support Servs. v. Miller*, 861 So. 2d 330, 336 (¶13) (Miss. 2003). "[T]he Commission has the responsibility to apply its expertise and determine which evidence is more credible." *Hamilton v. Southwire Co.*, 191 So. 3d 1275, 1282 (¶24) (Miss. Ct. App. 2016) (citation omitted).

¶10. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, GREENLEE AND WESTBROOKS, JJ., CONCUR. WILSON AND TINDELL, JJ., NOT PARTICIPATING.**