# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-SA-00529-COA

**LEVERNE BRENT AND LENARD BRENT**                    **APPELLANTS**

**v.**

**MISSISSIPPI DEPARTMENT OF HUMAN**                  **APPELLEES**
**SERVICES AND MISSISSIPPI STATE**
**AGENCIES WORKERS' COMPENSATION**
**TRUST**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/03/2021 |
| TRIAL JUDGE: | HON. ELEANOR JOHNSON PETERSON |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANTS: | JOHN HUNTER STEVENS |
| ATTORNEYS FOR APPELLEES: | ALAN M. PURDIE |
| | DION JEFFERY SHANLEY |
| | MICHAEL EDWIN D'ANTONIO JR. |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | AFFIRMED - 06/27/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., WESTBROOKS AND McDONALD, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1. Leverne Brent, who worked for the Mississippi Department of Human Services (MDHS), was injured on the job in 2009 while she was visiting a building owned by a third party, Madated LLC. MDHS and the Mississippi State Agencies Workers' Compensation Trust (collectively "employer/insurer") paid Brent benefits, including payments for her bills for medical treatment. Brent and her husband, Lenard, filed a negligence suit against Madated in the Hinds County Circuit Court, and the employer/insurer was granted permission to intervene to recover compensation benefits that had been paid. Brent ultimately settled

with Madated for $750,000. The employer/insurer sought reimbursement of expenses in the amount of $358,000, which included $3,137.50 for experts who performed employer medical evaluations (EME) used in Brent's litigation on the workers' compensation claim. The parties agreed to a reduction of the reimbursable medical expenses to a maximum of $335,000, but a controversy continued over the EME expense. The circuit court ultimately ordered Brent to reimburse the employer/insurer the $3,137.50 EME expense. Brent appeals from the circuit court's order. After considering the arguments of the parties and relevant precedent, we find no error in the circuit court's ruling, and we affirm.

## Facts

¶2. On July 22, 2009, Brent, a branch director for MDHS, sustained a work-related injury when she slipped and fell at a building owned by Madated. The employer/insurer paid Brent workers' compensation benefits and paid for her medical treatment. What was initially diagnosed as a left-wrist sprain turned out to be a more extensive injury. Brent's medical treatment over the years included two vertebral fusion surgeries and rotator cuff surgery. In addition, she suffered considerable pain and depression from the accident.

¶3. At some point, Dr. Sheila Lindley, who treated Brent for carpal tunnel syndrome, referred Brent to Dr. David Collip of NewSouth NeuroSpine for a physiatric (rehab) consultation. In his notes, he specifically said Brent was not there for an independent medical evaluation. He determined that Brent had reached maximum medical improvement (MMI) with respect to her rotator cuff injury and provided impairment ratings.[1]

---

[1] He stated, "As regards PPI [(partial permanent impairment)], she has a 3% UEI [(upper extremity impairment)] for her shoulder (Page 402, Grade C) and a 6% WPI [(whole

2

¶4.    Dr. Lindley assessed Brent's limitations based on Brent's hand injury, stating:

> Based on the AMA Guides to the Evaluation of Permanent Impairment, 6th
> Edition, she is assigned 5% impairment to the right upper extremity. This is
> based on her EMG nerve conduction studies which have confirmed carpal
> tunnel syndrome. It is my opinion that due to the injury to the left upper
> extremity there could be a component of overuse right upper extremity which
> could have precipitated carpal tunnel symptomology related to her increased
> use of the uninjured side. Also, she had a component of tendinitis at the level
> of the elbow. . . . It is also my opinion that she would do no overhead work or
> lifting, pulling or pushing on a repetitive basis greater than 10 pounds with
> either upper extremity.

¶5.    After receiving treatment for depression, Brent's case manager referred her to Dr.

Angela Koestler, a clinical psychologist, to determine if further treatment was needed. The

case manager wrote Dr. Koestler on May 28, 2013, requesting a "Behavioral Psychological

Evaluation," and specifically stated:

> Ms. Brent was referred to Restorative and Behavioral Services of Jackson,
> Mississippi by Dr. McGuire for Interdisciplinary Pain Rehabilitation Program
> (IDPRP) in 2012. Upon completion of the initial sessions, an additional 18
> sessions were requested, of which only 10 sessions was [sic] authorized.
> Additional sessions are being requested at this time.

> Based on your medical expertise and evaluation of Ms. Brent, please provide
> your medical opine [sic] as to the medical necessity of additional behavioral
> sessions and whether they are benefitting Ms. Brent. Please address whether
> you would recommend additional sessions or not. Why or Why not.

Dr. Koestler saw Brent on May 30, 2013, and performed a mental evaluation, which included

her interview with Brent, extensive testing, and a review of Brent's treatment as reflected in

her medical records. Tests included the Function Pain Questionnaire, McGill Adjective

Checklist, the Millon Behavioral Medicine Diagnostic, and the Personality Assessment

_____

person impairment)] for her 2 fusions (AOMSI). This is a total 8% WPI per the AMA
Guides, 6th Edition."

Inventory. Dr. Koestler rendered an opinion that Brent's work injury exacerbated her pre-existing depression and anxiety but that Brent did not need any further mental health treatment.

¶6. The employer/insurer paid $200 for Dr. Lindley's assessment, $50 for Dr. Collip's report, and $2,887.50 for Dr. Koestler's evaluation.

¶7. On July 13, 2012, Brent filed suit in the Hinds County Circuit Court against Madated, alleging negligence for a dangerous condition at the entrance of the building that caused her to fall. During the litigation, on May 2, 2014, the employer/insurer filed a motion to intervene in the lawsuit pursuant to Mississippi Code Annotated section 71-3-71 (Rev. 2021)[2] to recover $358,210.77 they had paid in compensation and medical expenses. On February 10, 2017, the circuit court granted the employer/insurer's motion to intervene.

¶8. Brent negotiated a settlement with Madated for $750,000, but she disputed that the employer/insurer's compensation and expense coverage totaled $358,210.77. According to Andrew Burkes, the claims adjuster assigned to the Brent claim, this amount broke down as follows: $44,577.61 in disability payments; $124,138.66 for medical treatments; a final

---

[2] This section states:

> The acceptance of compensation benefits from or the making of a claim for compensation against an employer or insurer for the injury or death of an employee shall not affect the right of the employee or his dependents to sue any other party at law for such injury or death, but the employer or his insurer shall be entitled to reasonable notice and opportunity to join in any such action or may intervene therein. If such employer or insurer join in such action, they shall be entitled to repayment of the amount paid by them as compensation and medical expenses from the net proceeds of such action (after deducting the reasonable costs of collection) as hereinafter provided . . . .

4

workers' compensation "settlement" payment to Brent totaling $166,500; $1,881.48 for vocational rehabilitation costs; and $21,113.02 for "expenses." Brent and the employer/insurer undertook discovery relating to these amounts.

¶9.    On October 17, 2017, Brent filed a motion to strike the employer/insurer's petition to intervene because no order granting intervention had been issued until after she had reached a settlement with Madated. In the alternative, Brent's motion sought to limit the amount of reimbursement that should be allowed, identifying some examples of charges she claims were fraudulent, such as $1,375 paid for "surveillance and investigation of the claimant."

¶10.    In an October 20, 2017 response to Brent's motion, the employer/insurer noted that in Brent's settlement petition (her "9(I) Petition for Settlement"), she agreed to all the amounts that Burkes had listed as related expenses. Further, the employer/insurer pointed out that Brent signed a "B-31 form," which also set these amounts, and submitted it to the Mississippi Workers' Compensation Commission (the Commission), which then entered an order for the settlement amount of $166,500 to be paid to Brent. In the response, the employer/insurer withdrew claims for reimbursement of the surveillance and vocational rehabilitation expenses. The employer/insurer offered to settle and accept reimbursement of $335,216.27 (the total disability payment, medical treatment, and settlement amounts) if it was also paid the rest of the $21,113.02 expenses, which it argued were related medical expenses.

¶11.    At a hearing on October 24, 2017, the circuit court approved the overall settlement

5

with Madated. In addition, the parties agreed to place $335,216.27 in an escrow account for payment of the employer/insurer's expenses, which would not be disbursed until further order of the court. The terms and provisions of the settlement were reduced to writing in a December 18, 2017, court order.

¶12. The employer/insurer included $3,137.50 for Dr. Lindley, Dr. Collip, and Dr. Koestler's EME expenses in the submission for reimbursement. Brent argued that these EME expenses were not recoverable under section 71-3-71. On August 23, 2019, an attorney who did not represent Brent requested a declaratory opinion from the Mississippi Workers' Compensation Commission as to whether EME costs were recoverable from a settlement of a suit filed by the insured against a third party under section 71-3-71. *See* Miss. Workers' Comp. Comm'n Proc. R. 2.24. On October 9, 2019, the Commission issued an opinion concluding that the payments of the EMEs were neither "compensation" nor the result of medical treatment. Thus, the Commission concluded, "EME charges paid by employers and carriers are unrecoverable as asserted compensation and medical expenses under Miss. Code Ann. § 71-3-71."

¶13. On October 28, 2019, the circuit court signed an "Order Validating Lien" that contained several stipulations of the parties. The parties stipulated that the employer/insurer had documented $334,986.90 in expenses and had withdrawn a claim of $229.37. However, the following sums remained in controversy: an EME exam by Dr. Koestler ($2,887.50), an MMI rating by Dr. Collip ($50), and an impairment rating by Dr. Lindley ($200) for a total of $3,137.50. The court ordered that the $3,137.50 remain in the attorneys' escrow account

6

and that all other sums be paid.

¶14. After the parties briefed the issue of the $3,137.50 reimbursement, the circuit court entered an order on March 3, 2021, finding that the EME expenses, which the court found were undertaken to determine Brent's temporary or permanent disability or medical treatment, should be classified as medical expenses. Further, the court held that these expenses, although not specifically addressed in the statute, were reimbursable under section 71-3-71 as reimbursable medical expenses.

¶15. On March 10, 2021, Brent moved the circuit court to reconsider its ruling. It attached the declaratory opinion adopted by the Commission and argued that there was no authority otherwise for treating the EME expenses as medical expenses. On May 19, 2022, the circuit court denied Brent's motion to reconsider.

¶16. Brent now appeals and argues a single issue: whether the EME expenses in this case were reimbursable medical expenses under section 71-3-71.

**Discussion**

¶17. "The Mississippi Workers' Compensation Act grants to a workers' compensation insurer the statutory right to reimbursement of benefits paid an injured worker in the event the worker recovers from a responsible third party." *Federated Mut. Ins. Co. v. McNeal*, 943 So. 2d 658, 660 (¶8) (Miss. 2006). This statutory right is found in Mississippi Code Annotated section 71-3-71, which provides that if an employee files suit against a third party, the employer or insurer may intervene and "shall be entitled to repayment of the amount paid by them as compensation and medical expenses from the net proceeds of such action (after

7

deducting the reasonable costs of collection) as hereinafter provided." In this case, Brent filed suit against Madated and, under section 71-3-71, the employer/insurer was entitled to recovery of compensation benefits paid.

¶18. Although there is no Mississippi appellate court decision on the issue of repayment for EME expenses, the Supreme Court has held that an insurer's recovery does not include the legal costs of intervention but may include payments like funeral expenses paid under the Workers' Compensation Act. *Kidwell v. Gulf M. & O. R. Co.*, 251 Miss. 152, 168 So. 2d 735, 736 (Miss. 1964). An employer/insurer may also seek reimbursement even if the benefit was not paid directly to the employee. *Miss. Food and Fuel Workers' Trust v. Tackett*, 778 So. 2d 136, 141 (¶16) (Miss. Ct. App. 2000) (funeral and medical expenses were reimbursable even if the employee's wrongful death beneficiary did not directly receive them). In *Tackett*, we reasoned that it would be an "inequitable windfall" to the employee or his or her successor if they could pursue recovery of those expenses in the suit against the third party but have no obligation to reimburse the party that actually paid them. *Id.*

¶19. In this case, the employer/insurer paid the expenses of an EME by Dr. Koestler and for reports by Dr. Lindley and Dr. Collip concerning Brent's impairment ratings and limitations. Brent argues that the employer/insurer is not entitled to reimbursement of these expenses from her recovery from a third party under section 71-3-71. She contends that the Commission itself has ruled that expenses of EMEs are not compensation or treatment, and she further maintains that these are not reimbursable "medical expenses" under the statute.

    A.     *Applicability of Commission Declaratory Opinion*

¶20.    Brent argues that the circuit court erred by not deferring to the Commission's declaratory opinion that the EME expenses in Brent's case were not reimbursable. We disagree.

¶21.    The Commission has the authority to establish its own rules of practice and procedure, *Hamilton v. Southwire Co.*, 191 So. 3d 1275, 1281 (¶21) (Miss. Ct. App. 2016), and courts will usually defer to the substantive decisions made by the Commission on individual workers' cases. "The Commission is the trier and finder of facts in a compensation claim. . . . This Court will reverse an order of the Commission only where such order is clearly erroneous and contrary to the overwhelming weight of the evidence." *Id*. at 1282 (¶23).

¶22.    But in the case before us, the findings in the Commission's declaratory opinion that Brent points to were not made during the course of the proceedings before the Commission concerning her eligibility for benefits or the extent thereof. Nor is this a case like the one Brent cites, *Greenwood Utilities v. Williams*, 801 So. 2d 783, 789 (¶21) (Miss. Ct. App. 2001), in which a witness was allowed to testify who was not previously listed on any pre-hearing memoranda. On appeal, the employer argued that the administrative judge abused her discretion in allowing the witness to testify. *Id*. This Court noted that the failure to identify the witness violated the Commission's procedural rules, *id*. at (¶22), but we also noted that "an administrative judge is vested with discretion to determine the proper procedural flexibility under its rules." *Id*. at 790 (¶23). It was in that context we said that "it is a rare day when we will reverse the Commission for action taken in implementation and

9

enforcement of its own procedural rules," which Brent quoted in her brief. *Id*. But the case before us does not deal with a ruling by an administrative judge or the Commission on any finding of entitlement to benefits or on the enforcement of a procedural rule. The action of the Commission here was a declaratory judgment rendered separately from Brent's case, and we find no reason to defer to the Commission's ruling.

¶23. In addition, we note that the Commission's authority to issue declaratory opinions is limited by its own rules. Mississippi Workers' Compensation Commission's Procedural Rule 2.24-301 states:

> Without limiting the generality of the foregoing, the circumstances in which declaratory opinions will not be issued include, but are not necessarily limited to:
>
> . . . .
>
> 3. There is pending or anticipated litigation, administrative action, or other adjudication which may either answer the question presented by the request or otherwise make an answer unnecessary[.]

Further, Rule 2.24-302 provides:

> A declaratory opinion will not be issued where a similar request is pending . . . or a proceeding is pending on the same subject matter before any agency, administrative or judicial tribunal . . . .

Miss. Workers' Comp. Comm'n Proc. R. 2.24-302. Finally, Rule 2.24-303 precludes declaratory opinions that "may adversely affect the interests of the State, the Commission, or any of their officers or employees in any litigation which is pending . . . ." Miss. Workers' Comp. Comm'n Proc. R. 2.24-303.

¶24. In this case, Brent filed suit against Madated in June 2013 and the employer/insurer were granted intervention in February 2017. The Commission's declaratory opinion was not

10

issued in the course of the Commission's consideration of the merits of Brent's claim but, rather, in 2019, long after her workers' compensation case was over and after Brent had filed her lawsuit against Madated. In addition, the opinion was rendered in the abstract and based on limited facts without briefing by the parties or the Commission's examination of Brent's entire case.[3] In addition, the Commission issued the declaratory opinion in October 2019, clearly during the litigation of the present circuit court case, i.e., a judicial proceeding, in violation of Rule 2.24-301(3). The issue of the reimbursement of EME expenses was raised in the circuit court where the Workers' Compensation Trust, a state entity, was a party and would be clearly affected by its resolution. Under these circumstances, a declaratory opinion by the Commission was invalid under Rules 2.24-302 and 2.24-303.

¶25. In addition, the Mississippi Supreme Court has held that courts need no longer give deference to agency interpretations of statutes. In a case reviewing the Mississippi Military Department's termination of an employee for violation of a statute prohibiting a public official from using his official position to benefit himself, the Mississippi Supreme Court held:

> [W]e announce today that we abandon the old standard of review giving deference to agency interpretations of statutes. Our pronouncements describing the level of deference were vague and contradictory, such that the deference could be anywhere on a spectrum from "great" to illusory. Moreover, in deciding no longer to give deference to agency interpretations, we step fully into the role the Constitution of 1890 provides for the courts and the courts alone, to interpret statutes.

---

[3] For example, the individual who requested the declaratory opinion said that the EMEs had no medical relevance when Dr. Koestler's report was clearly relevant to whether Brent received additional mental health treatment.

*King v. Miss. Mil. Dep't*, 245 So. 3d 404, 408 (¶12) (Miss. 2018).  Accordingly, we find that we need not defer to the declaratory opinion of the Commission, which was improperly issued contrary to its own rules, on the issue of whether the EME expenses in this case are reimbursable under section 71-3-71.

B.      *EME Charges as Medical Expenses under Section 71-3-71*

¶26.    Brent further argues that the EME expenses were not reimbursable "medical expenses."   Under section 71-3-71, an employer/insurer is entitled to repayment of compensation benefits and medical expenses from the net proceeds of any settlement.[4] According to Mississippi Code Annotated section 71-3-15 (Rev. 2021) compensation benefits include medical benefits, which also include EMEs of the injured.  Subsection (1) specifically states:

> Should the employer desire, he may have the employee examined by a physician other than of the employee's choosing for the purpose of evaluating temporary or permanent disability or medical treatment being rendered under such reasonable terms and conditions as may be prescribed by the commission.

Miss. Code Ann. § 71-3-15(1).  Thus, EME expenses are specifically included as "medical expenses" under the statute.

¶27.    Despite the clear language of the statute, Brent argues that reimbursable medical expenses are only those that the employer/insurer can show were "medically necessary" for

---

[4]  Section 71-3-71 reads in part:

> If such employer or insurer join in such action, they shall be entitled to repayment of the amount paid by them as compensation and medical expenses from the net proceeds of such action (after deducting the reasonable costs of collection) as hereinafter provided.

Brent's treatment. Brent points to the Commission's "Medical Fee Schedule" as the source for legitimate "medically necessary" expenses and argues that EMEs are not included.

¶28. We disagree with Brent. First, section 71-3-71 does not require a showing that a medical expense, specifically an EME, be proved to be "medically necessary" to be reimbursable. Nor does section 71-3-15 require such an additional showing. Moreover, the Commission's fee schedule, which applied to services rendered after June 15, 2019, includes an EME as "treatment" and does not appear to prohibit payment of a reasonable fee for such services.

¶29. In this case, in her evaluation of Brent, Dr. Koestler completed impairment ratings and determined Brent's work restrictions from a psychological standpoint, which was a medically necessary component of Brent's overall care and rehabilitation after the injury. Dr. Koestler determined whether Brent needed further psychological care based on her clinical examination of Brent, Brent's test results, and the overall course of Brent's medical treatment. Dr. Koestler's evaluation was clearly necessary to Brent's further treatment, and the circuit court was correct in finding it was a legitimate, reimbursable medical expense under the statute.

¶30. Moreover, the impairments ratings provided by Dr. Lindley and Dr. Collip were essential to the assessment of Brent's MMI medical condition on which the final settlement of her compensation case was based. Accordingly, we agree with the circuit court that these expenses were reimbursable as medical expenses under the statutes.

**Conclusion**

13

¶31.    Accordingly, we affirm the circuit court's order finding that the EME expenses in this case were medical and compensatory expenses reimbursable to the employer/insurer under section 71-3-71.

¶32.    **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**